AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

 Original ☐ Du



# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Records and information associated with the following cellular device assigned call number 323-979-1250, that is in the custody or control of Verizon, a wireless telephone service provider headquartered in Bedminster, New Jersey. | ) ) ) ) |

Case No. **23-M-425 (SCD)**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

      An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

    See Attachment A.

      I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    See Attachment B.

      **YOU ARE COMMANDED** to execute this warrant on or before    8-24-23    _____ *(not to exceed 14 days)*
  ☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

      Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

      The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Hon. Stephen C. Dries   _____ .
                                                                     *(United States Magistrate Judge)*

  ☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
  ☐ for _____ days *(not to exceed 30)*  ☑ until, the facts justifying, the later specific date of   02/06/2024   _____ .

Date and time issued:    8-10-23. 9:10 am    _____     *Stephen C. Dries*
                                                                           *Judge's signature*

City and state:    Milwaukee, WI    _____    Hon. Stephen C. Dries, U.S. Magistrate Judge
                                                                             *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.      Records and information associated with the following cellular device assigned call number (referred to herein and in Attachment B as the "Target Cell Phone"):

        a.      **323-979-1250,** that is in the custody or control of Verizon, a wireless

                telephone service provider headquartered in Bedminster, New Jersey.

**2.       The Target Cell Phone.**

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.    The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period August 1, 2021, to the present:

  i.    Names (including subscriber names, usernames, and screen names);

  ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii.    Local and long-distance telephone connection records;

  iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v.    Length of service (including start date) and types of service utilized;

  vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.    All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for the time period August 1, 2021, to the present including:

    a.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    b.   information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT")].

b.    Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i.    Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

3

ii.     Source and destination telephone numbers;

iii.    Date, time, and duration of communication; and

iv.     All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

c.     Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night.  "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i.     To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government.  In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of Target Cell Phone #2 on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

4

ii.      This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that will assist in the investigation of **Samuel MOORE** and others regarding violations of Title 21, United States Code, Sections 841(a)(1) and 846.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in these Warrants.

5



CLERK'S OFFICE
A TRUE COPY
Aug 10, 2023
SDDT
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )

Records and information associated with the following cellular device )
assigned call number 323-979-1250, that is in the custody or control of )
Verizon, a wireless telephone service provider headquartered in )
Bedminster, New Jersey. )

Case No. **23-M-425 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 846 and 841(a)(1) | Conspiracy to distribute marijuana and distribution of marijuana. |

The application is based on these facts:

See attached Affidavit.

☐ Continued on the attached sheet.

☑ Delayed notice of __180__ days *(give exact ending date if more than 30 days:* __02/06/2024__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Sean Carlson, ATF
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____Telephone_____ *(specify reliable electronic means).*

Date: ___08/10/2023___

_____
*Judge's signature*

City and state: Milwaukee, WI

Hon. Stephen C. Dries, U.S. Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION
# FOR SEARCH A WARRANT

I, Sean Carlson, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number as follows (the **Target Cell Phone**):

       a.     **323-979-1250,** whose service provider is Verizon, a wireless telephone service provider headquartered in Bedminster, New Jersey.

       The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute marijuana and distribution of marijuana) have been committed, are being committed, or will be committed by **Samuel MOORE**, and others (the Target Subject), including, but not limited to the user of cellular phone number **323-979-1250 (Samuel MOORE)**, and other known and unknown coconspirators.

3.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

4.     Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall with the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested

warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrants therefore include all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

5.     The Affiant is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been so employed since November 2015 and I am currently assigned to the Milwaukee Field Office.  Prior to my employment at ATF, I was a Patrol Officer at the Hammond Police Department in Hammond, Indiana for over four (4) years.

6.     As a Special Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, analysis of phone and financial records, and arrests of numerous drug traffickers. Furthermore, I have attended training courses which specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. Through training and experience, I have performed countless hours of physical and digital surveillance and am

2

aware that suspects will often take evasive action or employ methods to attempt to inhibit law enforcement's attempt to detect and monitor their illegal activities.

7.　　Through training, experience, and discussions with other experienced agents:

8.　　I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other areas of the United States.

9.　　I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, and crack cocaine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances.

10.　　I am familiar with the coded language utilized over the telephone to discuss drug trafficking and know that the language is often limited, guarded, and coded. I also know the various code names used to describe controlled substances.

11.　　I know drug dealers often put telephones in the names of others (nominees) or obtain pre-paid cellular telephones from companies where no subscriber name or address is required to distance themselves from telephones that they use to facilitate drug distribution. Because drug traffickers go through many telephone numbers, they often do not pay final bills when they are done using a telephone number and then are unable to put another line in the name of that subscriber; I also know that drug dealers tend to frequently change phone numbers in an attempt to avoid law enforcement detection.

12.　　I know large-scale drug traffickers must maintain on-hand, large amounts of U.S. currency to maintain and finance their ongoing drug business.

13.　　I know it is common for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments, and/or the

3

transfer of funds and other papers relating to the transportation, ordering, sale, and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them.

14. I know it is common for large-scale drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, their businesses, and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities or rival drug traffickers. These secure locations include, but are not limited to safes, briefcases, purses, locked filing cabinets, and hidden storage areas in natural voids of a residence.

15. I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transferring, concealing and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, and money wrappers. These items are maintained by the traffickers within residences (including attached and unattached garages), businesses or other locations over which they maintain dominion and control.

16. I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), computers and/or other electronic devices, currency counting machines, and telephone answering machines/voicemail to generate, transfer, count, record and/or store the information described in the items above, as well as to conduct drug trafficking activities.

4

17.     I know that drug traffickers often use social media accounts to further their drug trafficking and money laundering activities.

18.     I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency.

19.     I know drug traffickers commonly maintain addresses or telephone numbers in books, papers or electronically that reflect names, addresses, and/or telephone numbers of their associates in the trafficking organization.

20.     I am personally involved in the investigation of the offenses discussed in this affidavit and I am familiar with all aspects of this investigation. The statements contained in this affidavit are based on my knowledge and, in part, information provided by LEOs, including (a) my personal knowledge and observations derived from participation in this investigation; (b) review of oral and written reports that I have received directly or indirectly from other law enforcement officers about this and other drug-trafficking investigations; (c) discussions I personally had concerning this investigation with other experienced drug-trafficking investigators; (d) physical surveillance by the DEA, ATF , and North Central HIDTA, the results of which have been reported to me directly or indirectly; (e) public records; (f) review of telephone toll records, pen register and trap and trace information, and telephone subscriber information; (g) information provided by confidential sources working for local law enforcement officers, the DEA and North Central HIDTA; (h) review of driver's license and automobile

5

registration records; (i) records obtained from law enforcement databases; (j) my training and experience as an ATF Special Agent; and (k) the training and experience of other law enforcement officers involved in this investigation; (l) United States Postal service records; and, (m) and the public portion of the Target Subjects' social media accounts.

21.     Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your Affiant has had regular contact regarding this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

<u>**PROBABLE CAUSE**</u>

**A.  Background**

22.     Since at least 2018, narcotics investigators in southeastern Wisconsin identified **Samuel A. MOORE (M/W, XX/XX/1999)** as a large-scale drug trafficker. Specifically, in 2018 a confidential source (CS) provided information that **MOORE** was selling large amounts of marijuana in the Milwaukee, Wisconsin area.

23.     Case agents are aware that in January 2019, United States Postal Service Office of the Inspector General (USPS OIG) Special Agent (SA) Edward O'Dwyer and Milwaukee Police Department Detective (Det.) Eugene Nagler identified a group of individuals from California and Wisconsin, to include **Samuel A. MOORE** that have been sending high grade marijuana and marijuana derivatives through the U.S. mail. The controlled substances are sent from California to southeastern Wisconsin, including Milwaukee, and the Chicagoland area.

6

### 1. Parcel Seizures

24.     On February 22, 2019, SA O'Dwyer conducted routine parcel screenings at the Milwaukee mail processing annex, located at 7620 South 10th St., Oak Creek, Wisconsin. Special Agent O'Dwyer observed a suspicious United States Postal Service (USPS) Priority Mail parcel displaying tracking number 9505 5125 0644 9051 1685 58. The parcel in question bore a handwritten label addressed to "Brittany Corl, 3005 W. Maryland Ave., Milwaukee, WI 53211," and postmarked on February 20, 2019, in Los Angeles, California 90057. A search of a law enforcement database revealed that the destination address contained a fictitious name.

25.     On February 22, 2019, SA O'Dwyer met with Milwaukee Police Det. Eugene Nagler and his narcotics canine "Flora" at the Milwaukee mail processing annex. Together, Det. Nagler and "Flora" are a certified Police Narcotics Detection Team accredited through the Indiana Law Enforcement Training Academy in the detection of controlled substances and other controlled substances made with like components. Once at the annex, "Flora" indicated and alerted to the subject parcel.

26.     As a result, on February 25, 2019, SA O'Dwyer applied for and received a federal search warrant for the subject parcel, issued by U.S. Magistrate Judge Nancy Joseph, Magistrate Number 19-833M(NJ). On the same date, the subject parcel was searched pursuant to the above-referenced warrant. Det. Nagler located two packages of suspected marijuana weighing approximately 1,025 grams (with packaging). The suspected marijuana was field tested by Det. Nagler and tested positive for THC, the active ingredient in marijuana.

27.     On February 25, 2019, upon opening the subject parcel pursuant to the search warrant, Det. Nagler discovered one (1) package of suspected marijuana weighing approximately 505 grams (w/packaging). The suspected marijuana was field tested by Det. Nagler which tested

positive for the presence of THC. Det. Nagler subsequently connected the package mailed by **Samuel MOORE** to Richard ROARK (M/W, DOB XX/XX/1996). Det. Nagler reviewed United States Postal records and video surveillance in Los Angeles, California for the shipment of the package which depicted **Samuel MOORE** mailing the instant package, and the package described below, at the Los Angeles California Post Office. As stated, one of the packages identified as suspicious from this shipment sent by **MOORE** was addressed to 3005 N. Maryland Avenue, Milwaukee, Wisconsin. Previously case agents identified Brianna KNIGGE (W/F, DOB XX/XX/1999), who resided at 3005 N. Maryland Ave., Milwaukee, Wisconsin, as ROARK**'s** girlfriend at the time. A review of open-source databases accessible to Det. Nagler further revealed that Richard ROARK previously resided at 12765 W. Hampton Ave., Butler, Wisconsin which is the shipping address for several other identified suspicious packages.

28. Additionally, case agents know that on February 22, 2019, SA O'Dwyer located another suspicious package while conducting routine parcel screenings at the Milwaukee mail processing annex, 7620 S. 10th St., Oak Creek, Wisconsin 53154. This suspicious USPS Priority Mail parcel displayed tracking number 9505 5125 0644 9051 1685 41 and bore a handwritten label addressed to "Tyler Alvin Mass, 12765 W. Hampton Ave., Butler, WI 53007." This parcel bore a February 20, 2019, from Los Angeles, California 90057. A search of a law enforcement database determined that the destination address also contained a fictitious name.

29. Again, on February 22, 2019, at the postal annex, "Flora" indicated and alerted to the subject parcel. On February 25, 2019, SA O'Dwyer applied for and received a federal search warrant for the subject parcel which was issued by U.S. Magistrate Judge Nancy Joseph, Magistrate Number 19-834M(NJ). On February 25, 2019, upon opening the subject parcel pursuant to the search warrant, Det. Nagler located one package of suspected marijuana

8

weighing approximately 505 grams (with packaging). The suspected marijuana was field tested by Det. Nagler and tested positive for the presence of THC.

30.     Additionally, on May 30, 2019, United States Postal Inspector (USPI) Tyler Fink conducted routine parcel screenings at the Milwaukee Processing and Distribution Center (P & DC), located at 345 W. St. Paul Avenue, Milwaukee, Wisconsin 53203. This inspection revealed a suspicious parcel identified as United States Postal Service Priority Mail Express parcel EE503582065US. The shipping label for the subject parcel indicated it was sent from Coco & Eve, 801 S. Olive St., #804, Los Angeles, CA 90014." The parcel bore a handwritten label addressed to "Jocelyn Rogers, 12765 W. Hampton Ave., #201, Butler WI 53007," and a May 28, 2019, postmark from Los Angeles, California 90017.

31.     After searching a law enforcement database, Inspector Fink located a phone number for the origin address, 213-277-5060, and made contact with an employee of the Atelier Apartments who identified himself only as "Michael." "Michael" stated that he did not recognize the name of the sender and gave consent to search the subject parcel. Upon opening the subject parcel, Inspector Fink discovered eight (8) vacuum sealed plastic bags containing suspected THC vape cartridges with a total gross weight of approximately 5,070 grams which field tested positive for the presence of THC. Believing this package to be connected to Det. Nagler's investigation into previously seized packages of marijuana, Inspector Fink turned these items over to Det. Nagler. Det. Nagler is aware that the address 12765 W. Hampton Ave., #201, Butler, Wisconsin 53007 was previously identified as a recipient address for controlled substances sent from California to Wisconsin.

9

32.     Through a review of United States Postal records and video surveillance collected in Los Angeles, California, case agents were able to identify and connect **Samuel A. MOORE** to the above-mentioned subject parcels sent through the mail.

**2.     Cash seizure from MOORE**

33.     On Sunday July 28, 2019, Milwaukee County Sheriff Deputy Daniel Schlueter, assigned to the Milwaukee County Sheriff Office Airport Division at the Milwaukee Mitchell International Airport in the City of Milwaukee, was contacted by the Transportation Security Agency (TSA). A TSA official informed Deputy Schlueter that an individual carrying a large amount of U.S. currency made conflicting and suspicious statements at the screening station.

34.     Deputies Mazruczak and Schlueter responded to the security screening station and spoke with the lead screening agent who gave the following account. An individual identified as **Samuel A. MOORE** came through the screening station carrying a medium sized bag with a shoulder strap. During the screening process, the screening agents identified a very large amount of bulk cash. **MOORE** stated to the TSA agents, "Well it's my dad's stuff." **MOORE** indicated that he knew the cash totaled roughly $100,000 dollars; however, **MOORE** reiterated that the contents of the bag belonged to his father. Investigators had previously identified **MOORE**'s father as Daniel T. **MOORE** (W/M, DOB XX/XX/1969). Pursuant to TSA policy, TSA officials photographed **MOORE**'s boarding pass, a Southwest flight to California, and identification. TSA officials then allowed him to proceed to the gate. Based upon this information, the deputies located **MOORE**. Upon arrival they spoke briefly to **MOORE** who attempted to walk away, stating he wasn't going to take that flight. **MOORE** was detained by the deputies and escorted to the Sheriff's Office substation at the airport.

10

35.     A pat down of **MOORE** revealed that **MOORE** possessed a wallet that contained two (2) additional identification cards. A review of the additional identifications revealed that they were forged and false. **MOORE** possessed an Arizona driver's license listing the name "Charles Harvey Peterson, XX/XX/1996, 2619 E. Pinchot Avenue, Phoenix, AZ 85016." The picture depicted on the driver's license did not match **MOORE**.

36.     **MOORE** also possessed a New Jersey driver's license listing the name "Samuel Preston **MOORE**, XX/XX/1997, 232 Nord Beach Road, Jersey City, NJ 08242," depicting a photograph matching **MOORE**. Because **MOORE** possessed two false identifications, and at the time he was only nineteen years old, **MOORE** received a Milwaukee County citation, for forged/ falsified identification card by underage person.

37.      As a result of this stop, on July 28, 2019, Homeland Security Investigations (HSI) Special Agent Johnathan Cerf seized approximately $102,000.00 in cash and an Apple iPhone from **Samuel A. MOORE** at the Milwaukee airport.

38.     On August 5, 2019, case agents secured a search warrant for **MOORE**'s Apple iPhone. As the result of technical issues, only a partial extraction of the phone occurred. During review of the partial download, Det. Nagler observed a color photograph of a large amount of green plant material suspected to be marijuana, a color photograph of a large quantity of a yellow substance believed to be marijuana wax, a color video and picture of an individual believed to be **Samuel A. MOORE** displaying a large amount of U.S. currency in a vehicle.  Based upon his training and experience, Det. Nagler is familiar with the appearance of marijuana, marijuana wax, THC crumble and other marijuana products.

### 3. Confidential informant information and a controlled buy

39. In November of 2019, a confidential informant (CI-1) reported to a detective assigned to the Washington County Drug Task Force that **Samuel A. MOORE** was distributing large quantities marijuana in the Milwaukee and Washington County areas.

40. Case agents are aware that CI-1 was arrested by police for maintaining a drug trafficking house and provided the information after arrest in the hopes of receiving consideration on pending and/or potential charges. Law enforcement authorities are aware that CI-1 has no prior convictions. Case agents believe that CI-1 is truthful and reliable because information provided by CI-1 has been corroborated by other independent aspects of the investigation.

41. Thereafter in January 2020, case agents received additional information from the Washington County Drug Task Force that a West Bend resident, **Samuel A. MOORE**, believed to be currently residing in Los Angeles, California, routinely posts photographs and videos on social media of marijuana, THC vape cartridges, Promethazine with Codeine, firearms, as well as large quantities of U.S. currency. **MOORE** posts on Snapchat and Instagram indicating the narcotics are for sale and that he can be contacted through Snapchat and/or Instagram to place an order for controlled substances.

42. Through this investigation, case agents are aware that **MOORE** utilized the Instagram account "imsam - ID 1637476506," and posts frequently depicting images and videos of illicit drugs, firearms, and large sums of U.S. currency. **MOORE** utilizes to the platform to advertise product that either he, or others operating under this control, have available for sale.

43. On March 1, 2021, a confidential informant (CI-2), working under the direction of law enforcement, arranged to purchase five pounds of crumble (i.e., a marijuana product

containing THC concentrates) from **MOORE**. Case agents are aware that CI-2 was arrested by police for misdemeanor resist/obstruct offenses and bail jumping. These cases remain open, and CI-2 is working with law enforcement for consideration in these open cases. After arrest, CI-2 provided information about **MOORE**. Law enforcement authorities are aware that CI-2 has prior convictions for traffic and municipal ordinance offenses. Affiant believes CI-2's information is truthful because it has been corroborated by other aspects of this investigation.

44.     The controlled purchase between CI-2 and **MOORE** was arranged using **MOORE**'s Instagram account "imsam - ID 1637476506." Through the account "imsam - ID 1637476506," **MOORE** provided both a price and location for the transaction. Specifically, **MOORE** directed CI-2 to the area of S. 6th Street and Virginia Street, Milwaukee, Wisconsin, and instructed CI-2 where to park. Thereafter, **MOORE** informed CI-2 that a white pick-up truck would arrive to deliver the crumble. A short time later a white pick-up truck arrived at the location, and an unknown individual distributed the crumble. CI-2 further related that after the transaction, **MOORE** video chatted with CI-2 making sure CI-2 received the five pounds of crumble and was satisfied. Case agents subjected a sample of the crumble to a field test and received positive results for the presence of Tetrahydrocannabinols (THC), the active ingredient in marijuana, with a weight of 2,650 grams.

45.     On March 1, 2021, shortly after the above-described controlled purchase of the THC crumble, City of Milwaukee police officers observed the same white pick-up truck, bearing Wisconsin license plate PA5800, driven by a white male, later identified as Kyle BRICKNER (W/M, DOB XX/XX/1998) leave the controlled purchase of THC crumble at 539 W. Virginia Street, Milwaukee, Wisconsin. The officers observed the white pick- up truck drive south on South 5th Street, then west on West National Avenue, and south on South 6th Street before

13

entering the parking lot for the Mercantile Lofts, 611 W. National Avenue, Milwaukee, Wisconsin. Based upon their training, experience and familiarity with the investigation, case agents believe that BRICKNER engaged in counter surveillance maneuvers to avoid law enforcement detection.

46.     The officers observed BRICKNER exit the white pick-up truck with a small red shoulder bag and enter the building from the south entrance door. A short time later BRICKNER exited 611 W. National Avenue from the south building entrance door, carrying a tan plastic "Pick 'n Save" shopping bag, and re-entered the white pick-up truck. Officers observed BRICKNER drive back to 539 W. Virginia Street. A second white male later identified as Austyn HOCH, who was already parked at 539 W. Virginia Street, exited his vehicle, and entered the front passenger side of the white pick-up truck. HOCH and BRICKNER met for a short period inside the vehicle before HOCH exited the truck and reentered his vehicle. BRICKNER, driving the white pick-up truck, returned to 611 W. National Avenue, and entered the building via the south building entrance door.

47.     A short time later, after meeting with BRICKNER, law enforcement authorities arrested HOCH who was in possession of one pound of THC crumble.

**B.  Richard ROARK as the user of 262-352-0761[1]**

48.     On May 7, 2020, Det. Nagler spoke to a source of information (SOI-2) who provided information about drug trafficking between Los Angeles, California and Milwaukee,

---

[1] This Court has previously authorized the government to collect positional data for this cellular telephone used by Richard ROARK.  On August 29, 2022, law enforcement authorities conducted a traffic stop of ROARK who was in possession of 262-352-0761.  As a result of the traffic stop and a subsequent search of ROARK's residence, which, in part, revealed marijuana, firearms, approximately $10,000 in U.S. currency and jewelry valued in the hundreds of thousands, ROARK's 262-352-0761is now in the custody of law enforcement.  *See*, *infra*, for details of these events.

Wisconsin.[2] SOI-2 stated s/he knew of a group of young men who were distributing THC vape cartridges, THC edibles, slabs (THC wax) and flower (marijuana) through the social media platforms Instagram and Snapchat. SOI-2 identified **Samuel MOORE** and Richard ROARK as the main individuals involved in these activities. SOI-2 stated ROARK instructed **MOORE** in the method of both utilizing social media to advertise the product and using the U.S. postal system for distribution. SOI-2 stated that daily **MOORE** and ROARK each posted videos and photographs of marijuana, cash, and firearms on Instagram, and shipped the drugs to customers nation-wide through the U.S. postal system. SOI-2 stated ROARK has more money than **MOORE**. SOI-2 also related that ROARK and **MOORE** had a falling out in 2019 over money.

49.     SOI-2 also informed Det. Nagler that ROARK owns a home in Butler, Wisconsin. Case agents later determined that ROARK's home address is 13625 Hampton Rd., Brookfield, Wisconsin. In part, SOI-2 explained ROARK lives with his then girlfriend, Brianna KNIGGE**,** at the residence in Butler. SOI-2 provided ROARK's cell phone number, 262-352-0761, to Det. Nagler.

50.     In addition to providing information on KNIGGE**,** SOI-2 also stated ROARK previously dated Abigail LASKOSKI (W/F, DOB XX/XX/1997).  SOI-2 explained that when the relationship ended, LASKOSKI vandalized the windows of ROARK's Cadillac Escalade. Det. Nagler located an April 23, 2019, Brookfield Police Department report for disorderly conduct, with the address of the offense listed as 13625 Hampton Rd., Brookfield, Wisconsin. Case Agents' review of the Brookfield police report revealed that ROARK was listed as the victim and stated that he owned the residence at 13625 Hampton Road.  ROARK further

---

[2] SOI-2 is a citizen witness who has no pending charges, no criminal history and has not been remunerated for the information.  SOI-2 voluntarily provided the information to law enforcement, believing it was the right course of action.  Case agents believe SOI-2 is truthful and reliable because SOI-2's information was corroborated through independent police reports, open-source databases, and social media.

identified 262-352-0761 as his phone number. A further review of the reports revealed that Brianna KNIGGE was present during the incident, and the report described her as ROARK's current girlfriend. KNIGGE identified her address as 3005 N. Maryland Avenue. As indicated above, case agents are aware that suspicious parcels shipped by **MOORE** had previously been sent to that address.

51.     Additionally, the Brookfield police department report listed Abigail LASKOSKI's home address as 8890 Green Meadow Lane, Greendale, Wisconsin. Case agents are aware that during the course of this investigation, at least one (1) package deemed to be suspicious by investigators had been received at that address.

52.     On April 14, 2020, Washington County Circuit Court Judge Sandie Giernoth authorized a search warrant for Instagram content pertaining to **MOORE's** "imsam - ID 1637476506," account. On May 19, 2020, Det. Nagler reviewed the search warrant return data received for that account. Det. Nagler observed communication between "imsam - ID 1637476506," and an account identified as belonging to ROARK, "imrocochet – ID 176706666," approximately thirty-seven (37) times between January 2019 through March 2020. In one specific interaction between **MOORE** and ROARK, ROARK wrote, "Literally made you 100k in months and you shady towards me." "Imsam" responded, "If I made 100 offu u must've made 150-200 off me." Shortly thereafter, ROARK requested to buy marijuana; however, **MOORE** responded that it was all gone.

53.     On January 6, 2021, Milwaukee County Multijurisdictional Drug Enforcement Group Police Officer (PO) Marlin Schilcher spoke to a confidential informant (CI-3) who was arrested for possession of a controlled substance with the intent to distribute THC and is working in hopes of garnering consideration related to those charges. CI-3 has four (4) open felony cases

and has prior traffic ticket convictions. Case agents believe CI-3 is truthful and reliable because information provided by CI-3 has been corroborated by multiple sources through open records searches as well as case agents' specific case knowledge.

54.    CI-3 stated that individuals named **Samuel MOORE**, Richard ROARK**,** and Antonio M. ANGUIANO (H/M, DOB XX/XX/1997) were distributing marijuana. CI-3 stated ROARK was **MOORE's** "right hand man." CI-3 further explained that ROARK was supplying the "Young Paid Niggas," a Milwaukee based street gang, and **MOORE** was supplying another Milwaukee based street gang, the "Wild 100's." CI-3 further related that Antonio "Tony" ANGUIANO was one of **MOORE's** largest customers. CI-3 indicated that ANGUIANO's family owns a tow truck company where ANGUIANO stored product and proceeds of his drug dealing. CI-3 explained the tow truck company was on the boarder of Milwaukee and Menomonee falls. CI-3 also explained that ANGIANO rented an apartment in the Moderne building, located at 1141 N. Old World Third Street, Milwaukee, Wisconsin, and another apartment at 777 Apartments, located at 777 N. Van Buren Street, Milwaukee, Wisconsin. CI-3 also explained that ROARK had or has a place in Menomonee Falls.

55.    Additionally, on January 6, 2021, CI-3 stated that in the past he/she has received Instagram videos from **MOORE**, ROARK and ANGUIANO which depicted them with large amounts of marijuana and U.S. currency. CI-3 related that all three use Instagram to traffic drugs. CI-3 also stated that s/he has communicated will all three via Instagram utilizing the application's voiceover IP feature which allows users to place phone calls within the application. CI-3 stated ROARK sells a large quantity of marijuana and utilizes ANGUIANO to facilitate the deals.

17

56. On approximately January 29 or January 30, 2021, a publicly visible Instagram post on "imsam - ID 1637476506," **MOORE**'s Instagram profile, depicted ROARK and **MOORE** snowmobiling together in Minocqua, Wisconsin.

57. On April 20, 2021, United States Magistrate Judge Stephen C. Dries authorized a search warrant for the Instagram profile "imsam - ID 1637476506." Case agents received the return from Instagram on May 11, 2021. Between November 2020 and March 2021, Det. Nagler located approximately thirteen (13) contacts between **MOORE** and the Instagram profile "imricochet – ID 176706666," the known Instagram profile of ROARK**,** some of which case agents believe are drug related (i.e., "28 to me," and "Send me 5 for 10k").

58. Additionally, during the course of this investigation ATF Financial Investigator Michael Zeihen located credit card activity for ROARK on June 1, 2021, in the amount of $309.31 which occurred in Schoolcraft County (Michigan). Det. Nagler searched public and law enforcement databases for Schoolcraft County (Michigan) and found a record indicating ROARK purchased property at 316 Wolf St., Manistique, Michigan on September 11, 2020, for $50,000.

59. On September 2, 2021, case agents obtained an administrative subpoena for utility records at 316 Wolf St., Manistique, Michigan. A review of the subpoena return revealed that as of September 16, 2020, the utilities at 316 Wolf St, Manistique, Michigan 49854 are in the name of Richard C. ROARK. The return also listed 262-352-0761 as ROARK**'s** phone number. In addition to subscriber information, the return revealed a "High" rate of power consumption. Based upon their training, experience and familiarity with the investigation, case agents are aware that high electrical usage is an indicator that a building is being utilized to house a

18

marijuana grow operation.  Case agents are further aware that marijuana grow operations use an above-average level of electricity to operate the grow.

60.     On September 7, 2021, case agents obtained an administrative subpoena for toll records and subscriber information related to 262-352-0761 which revealed that Richard C. ROARK is the subscriber for this number.

61.     On December 15, 2021, the Honorable Nancy Joseph, United States Magistrate Judge, authorized search warrants for telephone numbers 262-352-0761 (ROARK), 630-453-3515 (ARROYO**)**, 773-636-6335 ("Cali Cartel drug phone**)**, and **323-979-1250 (MOORE)**.  In part, the warrants authorized case agents to obtain positional data for these phone numbers.  On January 14, 2022, the warrants expired.

62.     On December 27, 2021, at approximately 8:00 p.m., case agents' review of positional data for cell phone **323-979-1250**, used by **Samuel MOORE**, revealed that the phone left the Chicago area and headed north. The phone continued traveling north until it reached the area of 13625 Hampton Rd., Brookfield, Wisconsin, the previously identified home address of Richard ROARK.

63.     At approximately 9:20 p.m. on this same date, case agents' review of positional data for 262-352-0761**,** used by ROARK**,** revealed that it was also in the area of 13625 Hampton Rd., Brookfield, Wisconsin. Both the phone used by ROARK and the phone used by **MOORE** were registering off the same cellular tower.

64.     On December 27, 2021, at approximately 9:30 p.m., while both phones were in the same area, Det. Nagler observed an unknown white auto and a white Cadillac SUV in the driveway at 13625 Hampton Road.   ROARK'**s** residence is in a rural area and the driveway is

unlit. At the time of the instant surveillance, it was dark and Det. Nagler was only able to identify the vehicles.

65. At approximately 9:52 p.m., Det. Nagler observed the white Cadillac Escalade leave the driveway at 13625 Hampton Rd., Brookfield, Wisconsin, and head east on Hampton Road. Det. Nagler followed the Escalade east bound on Hampton Road. While following the Escalade, Det. Nagler was able to note the license plate on the white Cadillac Escalade, AGG4633, which lists to Richard ROARK, Jr. The Escalade continued east, then went north on HWY 41/45. Det. Nagler then discontinued physical surveillance. A review of positional data for 262-352-0761, ROARK's phone, revealed that the phone left the area during the period that Det. Nagler followed the white Escalade.

66. Det. Nagler returned to 13625 Hampton Rd., Brookfield, Wisconsin and observed the aforementioned unknown white auto remained parked in the driveway.

67. At approximately 10:13 p.m., the Escalade, registered to ROARK, returned to 13625 Hampton Rd., Brookfield, Wisconsin. A short time later, the unknown white auto left the driveway of 13625 Hampton Rd., Brookfield, Wisconsin. Positional data confirmed that **323-979-1250, MOORE's** phone, left the area at the same time the unknown white auto left the area. After leaving the area of ROARK's house, case agents' review of positional data for **323-979-1250** revealed the phone traveled directly back to Chicago, Illinois.

68. Later, on December 27, 2021, **MOORE** posted a publicly visible video to his Instagram account "100bandbrand" that depicted **MOORE** driving in a vehicle with a large amount of U.S. currency visible on his lap. Based upon case agents training and experience, and familiarity with the investigation case agents believe **MOORE** met with ROARK to collect drug

proceeds, which he then displayed on social media to increase his reputation and elevate his status.

69. On January 13, 2022, HIDTA analyst Martin Wilson conducted a telephone toll analysis of 262-352-0761. In part, the analysis revealed that between December 4, 2021, and January 4, 2022, approximately forty-two (42) contacts occurred between 262-352-0761 and **323-979-1250,** the number associated with **Samuel MOORE.**

70. On January 15, 2022, the Waukesha County Drug Stoppers received an anonymous drug tip stating that Richard ROARK was utilizing a warehouse location, located in very close proximity to his home, to store and sell large quantities of marijuana. At the time of this complaint, investigators were unaware of this warehouse location.

71. On January 24, 2022, the Honorable Stephen Dries, United States Magistrate Judge, authorized search warrants for telephone numbers 262-352-0761 (ROARK), 630-453-3515 (ARROYO**)**, and **323-979-1250 (MOORE)**. In part, the warrants authorized case agents to obtain positional data for these phone numbers. On February 23, 2022, the warrants expired.

72. On February 9, 2022, Det. Nagler, was able to locate ROARK's aforementioned Cadillac Escalade, utilizing positional data collected for 262-352-0761, the number associated with ROARK. Det. Nagler observed the vehicle at ROARK's known residence. A short time later, Det. Nagler followed the vehicle as it drove eastbound on Hampton Road, then northbound on north 126th Street. At this point, Det. Nagler lost sight of the vehicle and conducted a search of the adjacent blocks, where he observed ROARK's Cadillac Escalade parked in front of an unmarked tan one story brick warehouse, with large white overhead garage door, located at 5206 N. 126th Street, Butler, Wisconsin. Det. Nagler observed that the warehouse has dark window tinting taped to the inside of all windows, seemingly to prevent people outside from seeing into

the building. Det. Nagler observed that at the time he observed the vehicle parked in front of the warehouse, the location data for 262-352-0761 had moved from the area of ROARK's residence and registered on the tower that covered the area of this warehouse. Additionally, Det. Nagler had previously identified this general area because the positional data for ROARK's phone would frequently register on the tower located in this area; however, Det. Nagler had not previously identified the warehouse location. Finally, case agents are aware that this warehouse is located approximately three minutes, by vehicle, from ROARK's residence.

73. Through **MOORE's** social media posts, case agents were aware that **MOORE** was in Columbia from January 6, 2022, to February 14, 2022. Because **MOORE** was out of the country, location data and toll activity for **MOORE's** line was not reported to investigators during this time. Further toll analysis for **262-352-0761** revealed that **MOORE** contacted ROARK immediately upon his return to the United States on February 14, 2022.

74. On February 16, 2022, Det. Nagler was monitoring location data for **323-979-1250**, the number associated with **MOORE.** At this time, Det. Nagler observed the phone move from the Chicagoland area northbound toward Wisconsin. Established surveillance in the area of ROARK's house, located at 13625 Hampton Road, Brookfield, Wisconsin, in anticipation of a possible meeting between **MOORE** and ROARK. At approximately 1:39 p.m., using the positional data for ROARK's phone, I located ROARK at the previously identified warehouse, located at 5206 N. 126th Street, Butler, Wisconsin. At approximately 1:48 p.m., a silver pick-up truck, parked in front of the warehouse and a white male walked into the front door of the building. At 1:54 p.m., ROARK and the unknown white male exited the warehouse, and ROARK locked the front door with his keys. The unknown male walked back to his truck and left the area.

75.     At 1:55 p.m. I observed a white Volkswagen (VW) Sedan (unknown model; unknown plate) pull up next to ROARK's previously identified Cadillac Escalade SUV in the driveway of the warehouse.  When the driver of the white VW white sedan momentarily stepped outside of the vehicle to talk to ROARK, I observed that **MOORE** was driving the white VW sedan. A short time later, **MOORE** and ROARK both drove away. I am familiar with the appearance of both **MOORE** and ROARK.   Furthermore, to date other than marijuana trafficking, case agents have been unable to identify any business occupation for either **MOORE** or ROARK.

76.     At approximately 2:00 p.m., I observed **MOORE**, driving the white VW sedan, back into the driveway at ROARK's residence, located at 13625 Hampton Road, Brookfield, Wisconsin.  I observed **MOORE** park in the garage at 13625 Hampton Road.  Approximately 30 seconds later, I observed ROARK**,** driving the white Cadillac Escalade SUV, pull into the driveway and park.  I then observed **MOORE** and ROARK enter the residence.

77.     On February 17, 2022, HIDTA analyst Martin Wilson conducted a telephone toll analysis of 262-352-0761.  In part, the analysis revealed that between January 21, 2022, and February 17, 2022, approximately four (4) contacts occurred between 262-352-0761 and **323-979-1250,** the number associated with **Samuel MOORE.**

78.     On February 19, 2022, I conducted electronic surveillance of the previously identified warehouse associated with ROARK, located at 5206 N. 126th Street, Butler, Wisconsin.  At approximately 1:43 p.m., I observed ROARK walk to the front door and unlock it with keys.  A short time later an unknown white male, wearing a light-colored hooded sweatshirt pulled up over his head (bearing the same height and weight as **MOORE**) exited ROARK's Cadillac Escalade and walk inside the warehouse.  Approximately one minute later, an unknown

white male, driving a navy-blue pick-up truck, parked in front of the warehouse on the street, and walked into the warehouse through the front door.

79. At approximately 1:47 p.m., I observed the unknown white male exit the warehouse through the front door carrying a white bag. The unknown white male entered his navy-blue pick-up truck and left the area. A short time later, I observed both ROARK and the white male believed to be **MOORE** exit the warehouse. ROARK locked the door to the warehouse with a key, and both individuals reentered ROARK's vehicle and left the area. Based upon my training and experience, I believe that this meeting was consistent in length of time with a narcotics transaction. Analysis of locational data collected for 262-352-0761, the number associated with ROARK**,** and **323-979-1250,** the number associated with **MOORE,** revealed that both phones were registering on cell towers that covered the warehouse's location at the time of this meeting.

80. On February 23, 2022, the Honorable Stephen Dries, United States Magistrate Judge, authorized search warrants for telephone numbers 262-352-0761 (ROARK), 630-453-3515 (ARROYO) and **323-979-1250 (MOORE)**. In part, the warrants authorized case agents to obtain positional data for these phone numbers. On March 25, 2022, the warrants expired.

81. On March 3, 2022, a review of the location data for **323-979-1250**, used by **MOORE**, indicated that the phone traveled northbound out of Chicago. Case agents established surveillance around 13625 Hampton Road, Brookfield, Wisconsin, ROARK's address. At approximately 3:15 p.m., a case agent observed **MOORE**, driving the aforementioned white four door Volkswagen Sedan driving westbound on Hampton toward ROARK's residence. A case agent watched as the vehicle parked in the driveway at 13625 Hampton Road. A short time later, a case agent observed **MOORE** exit the vehicle carrying a plastic bag and enter the residence

24

through the rear entrance. It should be noted, location data collected for **323-979-1250** confirmed the phone was registering on a cellular tower that covered 13625 Hampton Road at the time **MOORE** was observed by investigators. Based upon their training, experience and familiarity with the investigation, case agents therefore believe that the phone was in **MOORE's** possession.

82.     At approximately 4:09 p.m., case agents observed ROARK arrive at the warehouse, previously identified as 5206 N. 126th St., Butler, Wisconsin, in his 2021 white Escalade AGG4633. At the same time, a case agent observed a maroon van arrive and park at the warehouse. A case agent observed ROARK park in front of the overhead door to 5206 N. 126th St., and he observed the maroon van park on the street. A case agent then observed an unknown white male exit the van and enter warehouse with ROARK. A few minutes later, a case agent observed the unknown male leave the warehouse with a box. ROARK then exited the warehouse and drove away in the Escalade. A review of the location data corresponding to ROARK's cell phone, 262-352-0761, revealed that the phone was registering on a tower that covers 5206 N. 126th St., Butler, Wisconsin at the same time the case agent observed this interaction.

83.     On March 21, 2022, Analyst Martin Wilson conducted toll analysis for 262-352-0761 for data collected between February 18, 2022, and March 21, 2022. A review of this data revealed that ROARK had ten (10) contacts with **MOORE** at **323-979-1250**. Analysis of the toll records collected during this time also showed eight (8) common contacts between ROARK and **MOORE**. As well as one (1) common contact between ROARK, **MOORE**, and ARROYO.

84.     On April 29, 2022, the Honorable Stephen Dries, United States Magistrate Judge, authorized search warrants for telephone numbers 262-352-0761 (ROARK), 630-453-3515

(ARROYO) and **323-979-1250 (MOORE)**. In part, the warrants authorized case agents to obtain positional data for these phone numbers. On May 29th, 2022, the warrants expired.

85. On May 3, 2022, **MOORE,** posted the following publicly visible photograph on the previously identified Instagram profile 100Bandbrand:



86. The photo displayed above depicts a screenshot of a Zillow.com Real Estate listing, with identifying information removed. **MOORE** asserts in the caption that the property

is in the upper peninsula of Michigan. In this screenshot, **MOORE** asserts that the property used to be a carpet store and that the location is a great site for a marijuana grow operation.

87.     On that same date, **MOORE** also posted the following publicly visible photograph to the Instagram profile 100BandBrand:



88.     The photo displayed above depicts the actual building which **MOORE** is advertising for sale. In the caption of the photograph, **MOORE** states the building "still looks like a running business," which your Affiant believes is intended as a means of concealing the

grow operation from law enforcement detection. It should be note, prior to this posting by **MOORE,** ATF Financial Investigator (ATF FI) Michael Zeihen was analyzing financial records for ROARK, obtained through grand jury subpoena.  While reviewing this financial evidence obtained, ATF FI Zeihen found a credit card transaction totaling $309.31 which occurred in Schoolcraft County, Michigan on June 01, 2021.  In response to learning of this transaction which occurred in Michigan, Det. Nagler searched public and law enforcement databases for Schoolcraft County, Michigan.   Det. Nagler identified a property located at 316 Wolf St, Manistique, Michigan, which records indicate is owned by Richard ROARK**.**  These records further state ROARK resides at 13625 CTH-K, Brookfield, Wisconsin 53005. The property sale date was September 11, 2020.

89.     The following photograph is from Google maps for 316 Wolf Street:



90.     The building depicted in this photograph, of which ROARK is the registered owner, appears to be the same building **MOORE** is trying to sell on social media, which he describes as a good site to house a marijuana grow operation.

91. On May 23, 2022, at approximately 3:26 p.m., Washington County Investigator John Otte observed through electronic surveillance that 262-352-0761, the number associated with ROARK, was traveling south towards Chicago.

92. Det. Nagler observed at approximately 4:38 p.m. - 5:55 p.m., 262-352-0761, the number associated with ROARK, registered on cellular towers in the area of the "near north side" and "gold coast" in Chicago, Illinois.

93. At approximately 6:08 p.m., 262-352-0761, the number associated with ROARK, began moving northbound towards Wisconsin.

94. At approximately 7:00 p.m., Det. Nagler established physical surveillance at 13625 Hampton Rd., Brookfield, Wisconsin, ROARK's residence.

95. At approximately 7:39 p.m., 262-352-0761, the number associated with ROARK, registered on a cellular tower in the area of S. 27th. St. and W. Rodgers St. Milwaukee, Wisconsin. Det. Nagler began to "spot check" known addresses in the area of Butler and Menominee Falls, Wisconsin.

96. At approximately 7:54 p.m., 262-352-0761, the number associated with ROARK, registered on a cellular tower in the area of Water St. and Barclay St. Milwaukee Wisconsin.

97. At approximately 8:20 p.m., Det. Nagler observed ROARK's aforementioned white 2021 Cadillac Escalade turn southbound on S. River Drive, in Menominee Falls, Wisconsin.

98. At approximately 8:21 p.m., Det. Nagler observed ROARK's white Cadillac Escalade pull in the driveway of W130 N6289 River Drive, Menomonee Falls, Waukesha County, Wisconsin. This is the known residence of James N. NEU, a suspected member of the

29

**MOORE DTO**. Beginning on January 7, 2020, ROARK, utilizing 262-352-0761, had 189 contacts with James NEU on 414-303-6824. The most recent contact was on March 5, 2022.

99.     At approximately 8:39 p.m., 262-352-0761, the number associated with ROARK, registered on a cellular tower whose coverage area includes W130 N6289 River Dr, Menomonee Falls, NEU's residence.

100.    At approximately 8:51 p.m., an unknown subject came out in the driveway of W130 N6289 River Drive with a large box and placed it in the rear of ROARK's white Escalade and the white Escalade left the driveway.

101.    Location data for 262-352-0761, the number associated with ROARK, showed the phone travel to western Brookfield, then eventually return to the area of ROARK's home, 13625 Hampton Rd., Brookfield, Wisconsin.

102.    On May 27, 2022, the Honorable Stephen Dries, United States Magistrate Judge, authorized search warrants for telephone numbers 262-352-0761 (ROARK), 630-453-3515 (ARROYO) and **323-979-1250 (MOORE)**.  In part, the warrants authorized case agents to obtain positional data for these phone numbers.  On June 26, 2022, the warrants expired.

103.    On June 2, 2022, Det. Nagler observed, through location data being collected for 262-352-0761, the number associated with ROARK, that the phone traveled south to rural area in Goshen, Indiana, and stopped near a small, unmanned airport, where it remained for a short time. After departing Goshen, Indiana the phone is observed, through location data, traveling directly back to the area of his residence in Brookfield, Wisconsin. Based upon this information, case agents are investigating the trip to this very small airfield.

104.    On June 19, 2022, location data for 262-352-0761, the number associated with ROARK confirm the cellular phone was registering on cellular towers in the area of Big Cedar

30

Lake, Wisconsin. On that same date, **MOORE** posted a video on his Instagram account 100bandbrand, which depicted **MOORE** and ROARK together aboard a boat.

105. On July 5, 2022, the Honorable Stephen Dries, United States Magistrate Judge, authorized search warrants for telephone numbers 262-352-0761 (ROARK), 630-453-3515 (ARROYO), and **323-979-1250 (MOORE)**. In part, the warrants authorized case agents to obtain positional data for these phone numbers. On August 5, 2022, the warrants expired.

106. On August 3, 2022, HIDTA Analyst Alec Libby conducted analysis of toll and location data for 262-352-0761, the number associated with ROARK and **323-979-1250,** the number associated with **MOORE,** and he determined both phones were registering on cellular towers which cover the same areas in Chicago, Illinois, and Wisconsin on the following dates: July 14, 2022, July 23, 2022, July 28, 2022, July 29, 2022, July 30, 2022, and July 31, 2022. During this same period, Det. Nagler observed numerous posts on the Instagram page "100BandBrand" where **MOORE** advertised marijuana for sale. Based upon their training, experience and familiarity with the investigation, case agents believe that a portion of these contacts are connected to **MOORE DTO** business.

107. On August 3, 2022, the Honorable Stephen Dries, United States Magistrate Judge, authorized search warrants for telephone numbers 262-352-0761 (ROARK), 630-453-3515 (ARROYO) and **323-979-1250 (MOORE)**. In part, the warrants authorized case agents to obtain positional data for these phone numbers. On September 2, 2022, the warrants expire.

108. On August 29, 2022, case agents observed 262-352-0761, the phone associated with ROARK, had made a very short trip to the area of Oshkosh, Wisconsin. Case agents have previously observed ROARK make similar quick turn-around trips, which they believe are consistent with drug trafficking. Members of the Washington County Sheriff's Department

observed ROARK, driving southbound on Interstate 41, south of Lannon Road, in the Village of Germantown. Shortly thereafter, Deputies observed that ROARK was driving a 2022 GMC Yukon Denali (bearing dealer plate no. APV2269). Deputies conducted a check of this license plate and determined it did not correspond to the vehicle affixed with the dealer plate. As a result, officers conducted a traffic stop. During the traffic stop, a canine alerted on the vehicle. Deputies searched the vehicle and located approximately 7,225 grams of suspected raw marijuana and three (3) Apple iPhones. ROARK was driving the vehicle and Jessica ETTA (W/F, DOB XX/XX/1995) was identified as the passenger. ROARK was placed under arrest for possession of THC.

109. On that same date, after learning of the traffic stop involving ROARK**,** Det. Nagler drove to ROARK's residence, 13625 Hampton Road, Brookfield, Wisconsin. At approximately 3:00 p.m., Det. Nagler arrived in the area of ROARK'**s** residence. A short time later he observed ROARK's mother, Shannon M. ROARK (W/F, XX/XX/1980) arrive at the residence driving a Blue Chevrolet Suburban (unknown plate). Shortly thereafter, Det. Nagler observed ROARK's father, Richard Carl ROARK (W/M, DOB XX/XX/1977) arrive driving a 2005 Cadillac Escalade SUV (bearing Wisconsin plate no. 885XWL). Det. Nagler watched as Shannon ROARK made several trips into the home and loaded various boxes into the Cadillac Escalade before driving the Cadillac Escalade away from the house. At the same time, Det. Nagler observed ROARK's father leave the house driving the Blue Chevrolet Suburban. Det. Nagler determined the Cadillac Escalade, driven by Shannon ROARK, was traveling above the speed limit as it drove eastbound on Hampton Road. Additionally, the vehicle appeared to have illegal tints. Consequently, City of Milwaukee Police Department officers initiated a traffic stop of the vehicle at 76th and Hampton in Milwaukee, Wisconsin. Upon making contact with

Shannon ROARK, officers immediately detected a strong odor consistent with raw marijuana coming from inside the vehicle. The officers searched the vehicle and located the following: one 9 mm pistol with and extended magazine, but without a serial number (commonly referred to as a "ghost gun"); three (3) wristwatches (two Rolex, one Audemars Piguet); additional jewelry; approximately 1,506.5 grams of suspected raw marijuana; six mg of oxycodone; 383.9 grams of suspected THC gummies; 52 THC vape cartridges; three ounces of suspected THC concentrate; 3,428 grams of THC edibles; and, 69.5 grams of suspected THC joints.

110. During a *Mirandized* statement, Shannon ROARK stated she received a phone call from a family member after the family member observed ROARK stopped by the police on I-41 southbound. Shannon ROARK stated that she went to ROARK's residence in order to retrieve her son's dog, when she observed the above-referenced items officers located in her vehicle inside her son's home. Shannon ROARK stated she panicked and did not know what to do, so she took the items, loaded them into her vehicle and left the house.

111. On August 30, 2022, HIDTA Analyst Martin Wilson analyzed location data collected for 262-352-0761, the phone used by **ROARK**, and **323-979-1250,** the phone used by **MOORE.** Analyst Wilson determined that both phones were registered on cellular towers in the same location on August 5, 2022, and August 21, 2022. On August 5, 2022, both phones registered on cellular towers that cover Butler, Wisconsin, which is consistent with both individuals being present at ROARK's residence. On August 21, 2022, both phones were pinging on towers that cover a portion of downtown Chicago, Illinois, consistent with both individuals meeting at that location.

112. In a separate warrant, on September 7, 2022, the Honorable Stephen Dries, United States Magistrate Judge, authorized search warrants for telephone number 262-352-0761

(ROARK). In part, the warrants authorized case agents to obtain positional data for this phone number. On October 6, the warrant expires.

113. On September 28, 2022, HIDTA Analyst Martin Wilson conducted an analysis of location data collected for 262-352-0761, the number associated with ROARK, and **323-979-1250,** the number associated with **MOORE**. Analyst Wilson determined on September 22, 2022, and September 23, 2022, location data for the phones associated with **MOORE** and ROARK registered on cellular towers that covered the same area in Milwaukee, Wisconsin, leading investigators to conclude the two were together. Additionally, Analyst Wilson determined through toll analysis that 262-352-0761**,** the number associated with ROARK, had a total of nine (9) telephonic contacts with **323-979-1250,** the number associated with **MOORE** on September 22, 2022. Based upon their training, experience and familiarity with the investigation, case agents are aware that both ROARK and **MOORE** continue their DTO activities.

### C. Daniel ARROYO as the user of 630-453-3515 and Samuel MOORE as the user of 773-636-6335[3]

114. In December of 2020, investigators observed **MOORE** post a photo on his Instagram "imsam - ID 1637476506" depicting **MOORE** with Daniel ARROYO (W/M, DOB XX/XX/1994), with a listed location of Miami, Florida.

115. On March 14, 2021, a review of electronic surveillance placed **Samuel MOORE**'s Cadillac Escalade CVY7433, at 5423 Garden Grove Ave., Tarzana, California. While at the residence, **MOORE** posted a video to his Instagram account "imsam - ID

---

[3]Through telephone toll analysis of 773-636-6335, case agents determined that the "Cali Cartel" phone recently incurred little drug trafficking activity. Consequently, case agents are not seeking a warrant for 773-636-6335. Instead, case agents' review of telephone data for **323-979-1250** revealed that the bulk of **MOORE's** drug trafficking telephone activity shifted to **323-979-1250**.

34

1637476506" depicting an individual holding a large quantity of banded U.S. currency while standing by a distinctly shaped in-ground pool. Investigators observed a high white privacy fence with the text "Cali plays hit different... tap in LA" overlaid on the video. Open-source aerial photographs displayed the pool and fence depicted in the above-mentioned video as a match for the pool and fence located in the backyard of 5423 Garden Grove Ave., Tarzana, California. Additionally, a review by case agents of the above-mentioned Instagram search warrant return for **MOORE's** profile "imsam - ID 1637476506" revealed numerous posts made by **MOORE** at the 5423 Garden Grove Avenue address. In these posts, investigators have observed large quantities of narcotics, cash, and firearms.

116. On March 15, 2021, Det. Nagler conducted an open-source database search and identified the telephone number 630-453-3515 as associated with Daniel ARROYO. Subpoenaed subscriber information confirmed that Daniel ARROYO subscribes to 630-453-3515. Additionally, several open-source databases list Daniel ARROYO as living at 5423 Garden Grove Ave., Tarzana, California.

117. On April 3, 2021, while in Los Angeles, **MOORE** made public Instagram posts to the "imsam - ID 1637476506" account, depicting a bottle of what appeared to be promethazine / codeine with the text "SWIPE UP WILL GO FAST 2600 NOT TAKING A DOLLAR LESS." On that same date, **MOORE** posted to the "imsam - ID 1637476506" account two (2) videos depicting a large amount of suspected raw marijuana.

118. On April 18, 2021, **MOORE** posted to the "imsam - ID 1637476506" several videos where **MOORE** stated that "the team" had purchased land which would be utilized as a marijuana grow in the countryside outside of Los Angeles. Using electronic surveillance, case agents determined that parcel of land is located at 23200 Grimsel Drive, Tehachapi, California

93561.  On May 5, 2021, **MOORE** made additional posts to social media while at the property where **MOORE** stated the land would be used as a grow operation to help the business supply more product.

119.    On June 30, 2021, **MOORE,** utilizing the account "imsam - ID 1637476506," stated that they "closed on the property after three months."  Det. Nagler searched the Kern County California website and determined that the property located at 23200 Grimsel Drive, Tehachapi, California 93561 was sold on June 30, 2021, to William KAMINSKI and Cristina ALVEREZ for $320,000.  A review of records related to the sale revealed that the buyers put down $120,000 in cash.

120.    HIDTA Analyst Martin Wilson analyzed telephone records related to ARROYO's 630-453-3515 number.  This review revealed consistent contact with the telephone number 312-593-1698.  Case agents obtained an administrative subpoena for toll records and subscriber information related to 312-593-1698. This examination revealed that Cristina ALVEREZ was the subscriber.  Additionally, the subpoena return listed William KAMINSKI as the "financial liability party" for 312-593-1698.  Det. Nagler located a 2009 Naperville, Illinois police report where Christina ALVEREZ-ARROYO (H/F, DOB XX/XX/1976) is identified as the mother of Daniel ARROYO.  In this same report, William L. KAMINSKI (DOB XX/XX/1967) identified Daniel ARROYO as his son.

121.    On April 24, 2021, Det. Nagler located two (2) public video posts on **MOORE's** Instagram account "imsam - ID 1637476506."  The videos depicted **MOORE** remotely watching video footage captured from a Ring doorbell.  The Ring video footage depicted two (2) subjects whom **MOORE** refers to as "Pig 1 and Pig 2" with the text "This is what a controlled deliver looks like. Paid 20 bucks an hour to be chumps doing bitch work." Det. Nagler was able to

identify one of the individuals in the above-mentioned ring doorbell video as United States Postal Inspector (USPIS) Tom Lynch. Det. Nagler spoke to Lynch's partner, DEA TFO Mike O'Connor who stated the video in question was an attempted controlled delivery of a suspicious USPS mail package (bearing tracking number EJ699199011US, mailed on April 22, 2021, from Tarzana, California, 91356). TFO O'Connor stated the package in question was addressed to "Danny ARROYO, at 737 W. Washington Blvd, Chicago, IL 60661, Unit 3006" and the package had a return address of "Santiago Martinez, 5421 Garden Grove, Tarzana, CA 91356." The suspicious parcel is more particularly described as requiring $360.25 in postage, measuring approximately 24 inches by 17 inches by 15 inches, and weighing approximately 54 pounds and 14 ounces.

122. On April 26, 2021, USPIS Thomas Lynch obtained a federal search warrant for the suspicious mail parcel. The parcel was opened pursuant to the search warrant and was found to contain ten (10) one (1) pound boxes of THC wax with a gross weight of 28.4 kilograms.

123. Further investigation revealed that the return address listed on the package as 5421 Garden Grove, Tarzana, California is fictitious, and in very close proximity to ARROYO's Tarzana, California address.

124. Within the timeframe of the package's shipment, the investigation revealed that **MOORE** and Daniel ARROYO were regularly together at 5423 Garden Grove Ave., Tarzana.

125. On April 27, 2021, **MOORE** posted public videos to the Instagram profile "imsam - ID 1637476506." Several videos depicted a large amount of apparent THC edibles on a table as well as a hand-written note containing a list of suspected marijuana strains available for purchase. On that same date, **MOORE** posted to the "imsam - ID 1637476506" account a video depicting seven (7) different large plastic bags containing suspected raw marijuana buds. The

37

bags displayed labels in front detailing the purported strain of marijuana contained within each bag.

126.    On May 3, 2021, **MOORE** made more public Instagram posts to the "imsam - ID 1637476506" account. Several videos also depicted a large amount of suspected raw marijuana available for purchase.  Similarly, **MOORE** posted another video depicting a large amount of suspected raw marijuana and a large amount of U.S. currency being counted on a gold money counting machine.  Based upon their training, experience and familiarity with the investigation, case agents believe that the contents of the video suggested that the cash represented proceeds generated from the sale of marijuana.

127.    On May 10, 2021, **MOORE** posted to the public Instagram account "imsam - ID 1637476506" four (4) videos which depicted a large quantity of different strains of suspected raw marijuana and purported THC edibles displayed in high rise apartment in Los Angeles.  Case agents have previously observed that **MOORE** routinely advertises this apartment as a "store" where customers are able to purchase his products.  From June 11 through June 13, 2021, **MOORE** continued to post similar public videos to the Instagram profile "imsam - ID 1637476506."

128.    From July 8 through July 13, 2021, **MOORE** continued to make drug related public Instagram posts to the "imsam - ID 1637476506."  One specific video depicted a large amount of U.S. currency with a gold money counter.  Case agents also observed a large black garbage bag and plastic "totes" containing suspected marijuana in this video.  Over this same time-period, **MOORE** posted a screenshot of the "Cali Connected / CHI connected" Telegram social media account.  The screenshot depicted a menu of available THC products; that is, photographs and videos of suspected marijuana and prices.

38

129.     From July 28 through August 9, 2021, **MOORE** made the following posts to the Telegram social media "Cali Connected / Chi Connected" account.[4] In sum, **MOORE** provided the following information in these posts. **MOORE** stated his Instagram and Snapchat are deleted and he is no longer doing business through either Instagram or Snapchat; and **MOORE** provided the phone number 773-636-6335 and directed customers to use this number to demonstrate proof of cash on hand for drug purchases via Apple Facetime video. Additionally, **MOORE** stated that transactions require a $10,000 minimum and further explained that he would be increasing it to a $20,000 minimum. Finally, **MOORE** stated that individuals showing $100,000 will be provided with another phone number to call. **MOORE** also posted several times where he displayed different grades/strains of marijuana, THC wax and THC concentrates with the corresponding cost per pound.

130.     Also in July 2021, **MOORE** posted a photo to the Instagram profile "imsam - ID 1637476506" depicting several individuals. The photograph (see below) is captioned, "Love my team. Cheers to health and wealth," and is location tagged as Las Vegas, Nevada. Case agents identified the individuals in the photograph as **Samuel A. MOORE**, Daniel ARROYO**,** and Danielle LEONARDI, whom investigators have previously identified as the girlfriend of ARROYO. Additionally, case agents located a public post on the separate Instagram profile "danielleleoo," corresponding to a photograph of Danielle LEONARDI**,** who is wearing the same dress and sleeves as in the "love my team" photo posted by **MOORE**. Investigators located publicly visible posts on this account where LEONARDI is with ARROYO. Based upon their familiarity with the investigation, case agents are aware that **MOORE** is not engaged in any legitimate business.

---

[4] Telegram is an online messaging application that functions similar to other popular messaging applications such as WhatsApp and Facebook Messenger. Telegram offers end-to-end encryption for the "secret chat option," thus providing more security in communications.

39



131.     On August 27, 2021, **MOORE** made a series of posts to an account on the social

media application Telegram, named "Cali Connected / Chi Connected." The posts depicted a

menu of product available labeled "Chicago menu," where **MOORE** stated he had

approximately fifty (50) pounds of product available for purchase. **MOORE** provided the phone

number 773-636-6335 with the caption, "To place order facetime with cash in hand or you will

be hung up on."[5]

132.     Case agents are aware that 773-636-6335 previously served as the "Cali Cartel"

drug line **MOORE** had advertised on a daily basis through the Telegram account "Cali

connected / Chi connected."  Case agents are aware that Telegram allows users to change group

<hr />

[5] Case agents had access to this account through an undercover Telegram account.

names, and **MOORE** sometimes renames this group "Cali Connected / Chi connected." On this account, **MOORE** routinely directs callers to utilize Apple Facetime with money in hand or "they are hung up on."

133.    Case agents are also aware that Telegram provides users the ability to designate "admin" members who have the ability to edit and post under the account.  A search of the "contact card" for the Telegram account "Cali Cartel" displays "Danny ARROYO" as a designated "Admin" for this account.  Attached below is a screenshot of the "Cali Cartel" account displaying Daniel ARROYO as an Admin for the account.  The screenshot also depicts a post made by ARROYO on July 2, 2021, where ARROYO posted a photo of suspected raw marijuana with the caption, "Updated Menu."



134.    On September 8, 2021, **MOORE** posted to the Telegram account "Cali connected / Chi connected" states "more indoor PLATINUM BUBBAS, super sticky great nose even better

smoke! These are first come first serve these are slightly even better than the last in my opinion as far as smoke and smell. Still great color super frosted and caked up. Call or text that number to place an order Again there's only 50 available Chicago ACT FAST CALL OR TEXT." **MOORE** also posted, "773-636-6335 is back active text or call now to place order I was not receiving texts or calls thanks."

135.    On December 6, 2021, the Chicago Police Department (CPD) investigated a burglary where witnesses observed three unknown subjects removing items from 1959 W. Superior, Unit 3, Chicago, Illinois.  When police responded they found the unit unoccupied with an open door.  During the course of their investigation, CPD Officers located a large amount of suspected marijuana (raw buds, and approximately 900 boxes containing THC vape cartridges) and a Taurus firearm.  CPD then subpoenaed the rent roll and lease documents pertaining to 1959 W. Superior, Unit 3, Chicago, Illinois.  The building's management provided the lease to CPD.  Case agents' review of the lease revealed that Unit 3 was leased by Daniel ARROYO, with a listed phone number of 630-453-3515**.**  The lease was signed on October 18, 2021, and was valid until October 31, 2022.

136.    On December 10, 2021, HIDTA Analyst Martin Wilson conducted toll analysis for 773-636-6335, **MOORE's** previous drug line, on data collected from August 2, 2021, to November 28, 2021.  Analysis of 773-636-6335 activity revealed approximately three contacts with Danielle LEONARDI, the known girlfriend of Daniel ARROYO, one contact with Daniel ARROYO, and two contacts with a phone registered to Morski Brands, employer of **Daniel MOORE, MOORE's** father.

137.    On January 13, 2022, HIDTA Analyst Martin Wilson conducted toll analysis for 630-453-3515 using data collected between February 12, 2021, to January 13, 2022.  Analyst

Wilson determined 630-453-3515 had approximately thirty-one telephonic contacts with phone numbers associated with **Samuel MOORE**, four contacts with **773-636-6335,** associated with the "Cali Cartel" Telegram activity and **MOORE**, and one contact with a number associated with Morski Brands who employs Daniel T. **MOORE, Samuel MOORE's** father.

138.    On January 30, 2022, review of positional data for 630-453-3515 revealed that ARROYO's cell phone registered on towers in the area of Trump Towers in Chicago Illinois. An Instagram post by ARROYO**'s** girlfriend (Danielle LEONARDI) described a stay at Trump Tower Chicago, Illinois during the same time period.

139.    On February 1, 2022, a review of positional data for 630-453-3515, ARROYO's cell phone, revealed that at approximately 7:30 a.m. the cell phone registered on cell towers around O'Hare International Airport.

140.    Later that same date, a review of electronic surveillance revealed that ARROYO's cell phone was in the area of Los Angeles, California.

141.    On February 2, 2022, a review of positional data for 630-453-3515 revealed that between 4:00 p.m. and 7:00 p.m., on numerous occasions the cell phone traveled from Sherman Oaks, California to downtown Los Angeles, California.  The cell phone registered on towers covering the area of 1200 S. Figueroa, which case agents have previously identified as the Circa apartments associated with **MOORE**.

142.    On February 3, 2022, at approximately 11:30 a.m., a review of positional data for 630-453-3515 revealed that the phone registered on a tower covering the 23200 Grimsel Drive, Tehachapi, California area.  The phone remained in this area until approximately 5:30 p.m., when it returned to the Sherman Oaks Area.   It should be noted, investigators have previously

43

identified this address as a large parcel of land which was purchased by **MOORE** and ARROYO to serve as a large-scale marijuana grow operation.

143. On February 17, 2022, HIDTA Analyst Martin Wilson conducted toll analysis for 630-453-3515 using data collected between January 21, 2022, and February 21, 2022, which revealed ARROYO had one contact with **MOORE** on **323-979-1250** on February 15, 2022.

144. As noted above, **MOORE** was in Columbia from January 6, 2022, through February 14, 2022. Therefore, 630-453-3515, the cell phone associated with ARROYO, had minimal contact with the cell phone associated with **MOORE** because **MOORE** was out of the country.

145. On February 11, 2022, Det. Nagler learned of a Chicago Illinois police report taken that same date, listing Daniel ARROYO as the victim of an armed robbery. The report listed the address of 401 N. Wabash Ave., 46E Chicago, Illinois for ARROYO, and identified 630-453-3515 as his phone number. The complaint stated an unknown male produced a handgun and took ARROYO's luggage as he was leaving Trump International Hotel & Tower Chicago, then fled in a silver and black Mercedes. According to the report, ARROYO left the scene before police arrived. Based upon their training and experience, case agents believe that this was a targeted robbery of a drug trafficker, in part, because ARROYO did not cooperate with law enforcement.

146. Case agents' review of the positional data collected for 630-453-3515 revealed that the phone registered off a cell phone tower in the direct area of 401 N. Wabash Ave., Chicago, Illinois, during the armed robbery. A review of the positional data further revealed that ARROYO's phone left the area of 401 N. Wabash Ave. and traveled to O'Hare International

44

Airport. Positional data also revealed that the cell phone registered at the Los Angeles International Airport, Los Angeles, California, later in the day.

147. Case agents' use of the positional data collected for 630-453-3515 has assisted the investigation through the identification of an area in Sherman Oaks California where ARROYO has been staying with his girlfriend Danielle LEONARDI. Investigators have also observed ARROYO'**s** phone in the area of **MOORE's** purported grow operation on numerous occasions.

148. On March 17, 2022, Los Angeles investigators utilized location data collected for 630-453-3515, the cellular telephone number used by ARROYO. Using positional data for this number, investigators observed ARROYO exit the Los Angeles International Airport, and enter a black Porsche SUV (bearing California license plate number 8SMH244). Investigators followed ARROYO to 4224 Mammoth Avenue, Sherman Oaks, California. Prior to March 17, 2022, this address and vehicle were not known to investigators.

149. On March 21, 2022, Analyst Martin Wilson conducted toll analysis for 630-453-3515 using data collected from February 22, 2022, to March 21, 2022. A review of this data revealed that ARROYO had one (1) contact with **MOORE** at **323-979-1250** on March 17, 2022. Analysis of the toll records collected during this time also shows four (4) common contacts between ARROYO and **MOORE**. As well as one (1) common contact between ROARK, **MOORE**, and ARROYO.

150. Analyst Wilson also determined, utilizing location data collected for both phones, that ARROYO and **MOORE's** phones were both registering on cellular towers in Chicago, Illinois at the same time on approximately eight (8) occasions between February 21, 2022, and March 17, 2022. Additionally, a review of location data collected for 630-453-3515, ARROYO'**s** phone, revealed that the phone was registering on a cellular tower that covers the

area of 23200 Grimsel Dr., Tehachapi, California on approximately ten (10) occasions between February 17, 2022, and March 22, 2022. Case agents know that during the course of the investigation, **MOORE** has posted numerous videos to his social media account in which he stated this location is the site of a large marijuana grow operation.

151.    Between April 29, 2022, and May 25, 2022, investigators utilized location data for 630-453-3515, the number associated with ARROYO**,** and determined ARROYO made approximately three trips to Chicago, Illinois (April 29, 2022, May 12, 2022, and May 20, 2022). Each trip was for a very short duration, usually only one (1) night. While in Chicago, location data collected for 630-453-3515, the number associated with ARROYO**,** showed that the phone consistently registered on cellular towers which cover the area of the Trump Tower in Chicago, Illinois. Investigators have previously determined ARROYO often frequents this hotel.

152.    On May 26, 2022, HIDTA Analyst Martin Wilson analyzed location data for 630-453-3515, the number associated with ARROYO**,** collected between April 29, 2022, and May 25, 2022. Analyst Wilson determined that 630-453-3515, the number associated with ARROYO**,** was registering on cellular towers which covered 23200 Grimsel Drive, Tehachapi, California 93561, the site of the previously identified suspected marijuana grow operation. The phone registered in the area of the suspected grow location for the day on May 19, 2022, from approximately 10:30 a.m. to 4:30 p.m.

153.    On June 3, 2022, Det. Nagler observed that location data for 630-453-3515, the number associated with ARROYO**,** was registering on a cellular tower in the area of 23200 Grimsel Dr., Tehachapi, California, the site of a suspected large marijuana grow operation. Utilizing the location data, investigators coordinated with members of the Kern County Sheriff's Department in California to conduct physical surveillance. Sheriff's Deputies observed a black

or dark gray 2017 Dodge Ram pickup truck (bearing Illinois license plate 3120093B leaving 23200 Grimsel Drive.  The pickup truck was pulling a trailer.  Deputies conducted a traffic stop on the vehicle and identified one of the two (2) occupants as ARROYO.  It should be noted, at the time of this traffic stop, location data for 630-453-3515, the number associated with ARROYO, was registering on a tower that covered the area where the traffic stop occurred, leading investigators to conclude the phone was likely in ARROYO's possession.  During the stop, officers located an insurance card which indicated the vehicle was insured in ARROYO's name.  The vehicle registration lists Cali Exotic Car Rentals and Daniel ARROYO as the registered owner of the vehicle.

154.    On June 28, 2022, HIDTA Analyst Martin Wilson analyzed location data for 630-453-3515, the number associated with ARROYO, and determined he made three (3) trips to Chicago between May 28, 2022. and June 25, 2022.  During these trips, location data for 630-453-3515, the number associated with ARROYO, indicated that the phone was almost constantly registering on cellular towers which covered the area of Trump Tower, 401 N. Wabash Avenue, Chicago, Illinois.  During all three (3) trips, location data for **323-979-1250,** the number associated with **MOORE,** indicated **MOORE's** phone was contemporaneously pinging on cellular towers which covered the area of Trump Tower.  This data leads investigators to believe that **MOORE** and ARROYO were together during each of ARROYO's three (3) visits.

155.    Analyst Wilson further determined 630-453-3515, the number associated with ARROYO, registered on cellular towers which cover 23200 Grimsel Dr., Tehachapi, California, the site of a suspected large marijuana grow operation on three (3) occasions between May 27 and June 25, 2022.  Finally, Analyst Wilson determined 630-453-3515, the number associated with ARROYO, was registering on cellular towers which cover "Circa LA," 1200 S. Figueroa

47

St., Los Angeles, California on eight (8) occasions between May 27 and June 25, 2022. This location has previously been identified as a stash location for the drug trafficking organization.

156. On July 13, 2022, the Los Angeles County Sheriff's Department executed a State of California search warrant at 4224 Mammoth Avenue, Sherman Oaks, California, a residence associated with Daniel ARROYO for exportation of THC. Prior to the execution of the warrant, investigators established surveillance around 4224 Mammoth Avenue. At approximately 5:45 p.m., investigators observed ARROYO and his previously identified girlfriend, Danielle N. LEONARDI (H/F, DOB XX/XX/1994) exit the residence and enter a black 2019 Mercedes AMG SUV (bearing California license plate no. AMG63V8) and drive away from the residence. Investigators followed ARROYO and deputies, driving a fully marked LA County squad car, immediately conducted a traffic stop on ARROYO into custody for drug related offenses.

157. During the search of the residence and associated vehicles on property, investigators located the following items:

- Approximately 1,093.8 pounds of marijuana (including 6,000 THC vape cartridges) all throughout the home and garage.

- Approx. 1,200 rounds of ammunition located in the office safe.

- Seven (7) firearms (1 rifle and 6 pistols) and high-capacity magazines:

  ○ One pistol was located on ARROYO's person at the time of his arrest; one unsterilized pistol "Ghost gun" located in a truck belonging to ARROYO for which he had keys; four additional pistols; and one rifle located in the office safe.

  Additionally, the following devices were located:

48

- Black Apple iPhone (model unknown, serial no. unknown, associated phone number 630-453-3515, item no. 1) located on ARROYO's person at the time of his arrest;

- Gold Apple iPhone (model unknown, serial no. unknown, associated phone number 818-439-8676, item no. 2) located in vehicle on traffic stop;

- Blue Apple iPhone (model unknown, serial no. unknown, associated phone number 213-910-7738, item no. 3) located in vehicle on traffic stop;

- Black Apple iPhone (model A1660, serial no. 579C-E33085, item no. 39);

- Blue Apple iPhone (model unknown, serial no. unknown, item no. 40) located inside the home;

- Black Apple iPhone inside plastic case (model unknown, serial no. unknown, item no. 41) located inside the home;

- Black Apple iPhone inside silicone case (model unknown, serial no. unknown, item no. 42) located inside the home;

- Black Hikvision DVR recorder (unknown model, serial no. unknown, item no. 43) located inside the home;

- Black Apple iPhone inside beige case (model unknown, serial no. unknown, item no. 44) located inside the home;

- Black Tablet (make unknown, model M2V3R5, serial no. unknown, item 46) located inside the home;

- Silver Apple MacBook Pro laptop (model A1466, serial no. unknown, item 47) located inside the home;

- Grey Apple MacBook Pro laptop (model A2442, serial no. MG21FCVY23, item 50) located inside the home;

- Apple iPad Pro with white keyboard case (serial no. unknown, item 55) located inside the home;

- SanDisk 32 GB usb drive (item 56) located inside the home;

49

- Blue Apple iPhone (model unknown, serial no. unknown, item no. 57) located inside the home;

- Blue Apple iPhone (model unknown, serial no. unknown, item no. 58); and a

- Grey Apple MacBook Pro laptop (model A2442, serial no. PG16Y2XV29, item 60).

Other relevant items were also located:

- Two (2) Rolex watches believed to be valued in excess of $50,000;

- Financial documents addressed to ARROYO;

- Mail addressed to ARROYO at 4224 Mammoth Ave., Sherman Oaks, California;

- Notebooks containing a written ledger of money transfers to individuals; and

- Lease documents for an apartment inside Trump Tower in Chicago, Illinois.

158. On that same date, Milwaukee Police Detective Eugene Nagler, West Bend Detective John Otte and LA County Detective Gerardo Lozano conducted a *Mirandized* custodial interview of ARROYO. During this interview, in part, ARROYO stated to investigators that he is actively engaged in the business of selling marijuana, which he ships to destinations throughout the United States. ARROYO also stated he has a grow operation in the Tehachapi area north of Los Angeles which he recently harvested for approximately 150 pounds of marijuana, because he observed a helicopter flying overhead. ARROYO stated he believed that helicopter associated with law enforcement so he harvested all the product at the grow fearing that law enforcement would be executing a search warrant at the grow operation.

159. ARROYO stated to investigators that he is a convicted felon, based on 2017 convictions for manufacture delivery THC and manufacture delivery of Ecstasy. ARROYO further explained he knows he is prohibited from possessing firearms, but he acquired them because he was robbed of drug proceeds in the past. ARROYO further explained he obtained the

firearms for protection of his drug proceeds. ARROYO stated he has traded marijuana for firearms in the past, and stated he acquired the unsterilized "ghost gun" pistol from an unknown subject in the Chicago, Illinois area.

160. On August 30, 2022, HIDTA Analyst Martin Wilson analyzed location data collected for 630-453-3515, the number associated with ARROYO, and **323-979-1250,** the number associated with **MOORE.** Analyst Wilson determined that both phones registered on cellular towers in the same location on August 13, 2022, August 14, 2022, August 15, 2022, and August 26, 2022. During these periods, both phones registered on cellular towers which cover the Trump Tower in Chicago, Illinois. During the course of the investigation, investigators have determined that ARROYO rents a unit at Trump Tower. Based upon their training, experience, and familiarity with the investigation, case agents believe that these periods of overlap represent visits between **MOORE** and ARROYO.

161. On September 1, 2022, the Honorable Stephen Dries, United States Magistrate Judge, authorized search warrants for telephone numbers 630-453-3515 (ARROYO) and **323-979-1250 (MOORE).** In part, the warrants authorized case agents to obtain positional data for these phone numbers. On September 30, 2022, the warrant expired.

162. On September 28, 2022, HIDTA Analyst Martin Wilson analyzed location data for 630-453-3515, the number associated with ARROYO. Analyst Wilson determined 630-453-3515**,** registered on cellular towers that covered the area of a previously identified marijuana grow operation at 23200 Grimsel Drive, Tehachapi, California 93561. Analyst Wilson also determined, through analysis of location data collected for 630-453-3515**,** the number associated with ARROYO**,** and **323-979-1250,** the number associated with **MOORE,** that both individuals registered on cellular towers which cover the Trump Tower, in Chicago, Illinois at the same time

51

on September 2, 2022, September 3, 2022, and September 4, 2022, respectively. Case agents had previously determined, through leasing documents located in the aforementioned search warrant at ARROYO's home, that ARROYO rents a unit in this building.

163. On September 30, 2022, the Honorable Stephen Dries, United States Magistrate Judge, authorized search warrants for telephone numbers 630-453-3515 (ARROYO) and **323-979-1250 (MOORE).** In part, the warrants authorized case agents to obtain positional data for these phone numbers. On October 29, 2022, the warrants expired.

164. On October 27, 2022, HIDTA Analyst Alec Libby conducted analysis of location data being collected for 630-453-3515**,** the number associated with ARROYO, and determined the phone registered on cellular towers which cover the previously identified marijuana grow in Tehachapi, California on October 4, 2022, and October 9, 2022. Analyst Libby also determined 630-453-3515**,** the number associated with ARROYO**,** registered on cellular towers in Chicago, Illinois October 11, 2022, through October 20, 2022. Analyst Libby further compared this location data with the location data being collected for **323-979-1250,** the number associated with **MOORE,** and determined both phones registered in the same area every day from October 11, 2022, through October 20, 2022, when the phone associated with ARROYO traveled to O'Hare airport, then resurfaced in Los Angeles, California.

165. On October 19, 2022, while the phones for **MOORE** and ARROYO registered in the same area, **MOORE** posted a video through the social media application Telegram which depicted a shelf containing hundreds of branded THC vape cartridges, and many large vacuum sealed bags containing what appeared to be raw marijuana. This video, combined with the close proximity of the pings, leads investigators to believe **MOORE** and ARROYO continue to

partner to distribute marijuana large quantities of marijuana, and **MOORE** uses the **Target Cell Phone** for this purpose.

**D. Samuel MOORE as the user of 323-979-1250**

166. On December 27, 2021, Det. Nagler used the positional data for **323-979-1250,** the number associated with **MOORE,** to physically surveil a meeting between **MOORE** and ROARK, at ROARK's residence in Brookfield, Wisconsin. The details of that meeting are detailed above.

167. On September 2, 2021, the Honorable Judge Nancy Joseph signed a federal search warrant for the Instagram profile "imsam - ID 1637476506." Investigators received the return from Instagram on September 14, 2021.

168. On September 15, 2021, HIDTA Analyst Martin Wilson analyzed data contained in the Instagram return for the profile "imsam - ID 1637476506." In the analysis, Analyst Wilson located eighteen (18) instances where **MOORE** provided the number **323-979-1250** to people during drug related communications on Instagram. In one specific interaction which occurred on June 27, 2021, **MOORE** provided **323-979-1250** to user "@6papo-ID 149258107." During the conversation with "imsam - ID 1637476506," "@6papo-ID 149258107" stated @6papo-ID 149258107 will be in Los Angeles and wanted to place a $10,000 order. **MOORE** provide this Instagram user with **323-979-1250** as a contact number.

169. On September 15, 2021, DEA TFO Joseph Scheuring served an administrative subpoena to Verizon Wireless for toll data and subscriber information related to **323-979-1250.** The subpoena return revealed that the phone was a prepaid account, which contains no subscriber information. Your Affiant is aware through training and experience, it is common for

those engaged in drug trafficking to utilize prepaid phones as an attempt to conceal their activities from law enforcement.

170.    On January 13, 2022, Analyst Wilson searched **323-979-1250** against telephone toll data of previously identified phone numbers associated with members of the drug trafficking organization.  Analyst Wilson determined **323-979-1250,** the number associated with **MOORE**, contacted ARROYO at the 630-453-3515 number on October 23, 2021.  Analyst Wilson Analyst Wilson also observed **323-979-1250** had forty-two contacts with 262-352-0761**,** the number associated with Richard ROARK between December 4, 2021, and January 4, 2022.

171.    On February 17, 2022, Analyst Wilson searched **323-979-1250** against telephone toll data of previously identified phone numbers associated with members of the drug trafficking organization.  Analyst Wilson determined **323-979-1250,** the number associated with **MOORE**, was contacted by ARROYO at the 630-453-3515 number on February 15, 2022.  Analyst Wilson Analyst Wilson also observed **323-979-1250** had thirty-nine contacts with 262-352-0761**,** the number associated with Richard ROARK between December 4, 2021, and February 16, 2022.

172.    Case agents are aware that **323-979-1250,** the line associated with **MOORE,** had minimal contact with ROARK and ARROYO because **MOORE** was out of the country in Columbia, from January 6, 2022, through February 14, 2022.  Toll analysis conducted on the lines belonging to ROARK and ARROYO revealed that **MOORE** immediately reestablished contact with both individuals when he returned to the United States. As outlined above, locational data being collected for **MOORE** allowed investigators to observe several meetings with ROARK, as well as link **MOORE** to the newly identified warehouse, located in Butler, Wisconsin.

54

173.    On February 28, 2022, case agents observed publicly visible posts on the Instagram profile "100bandbrand," previously identified through a search warrant as belonging to **MOORE**, which depicted **MOORE** driving a Bentley vehicle in the Chicago area.  The posts also depicted **MOORE** in an unknown location which he purported to be the site of an indoor marijuana grow operation belonging to **MOORE**.

174.    On March 3, 2022, as described above, location data collected for **323-979-1250**, the number belonging to **MOORE**, has been invaluable in allowing case agents to document a meeting between **MOORE** and ROARK at ROARK's residence.

175.    On March 21, 2022, Analyst Martin Wilson conducted toll analysis for **323-979-1250** for data collected between February 16, 2022, and March 21, 2022.  A review of this data revealed that **MOORE** had five (5) contacts with ROARK at 262-352-0761 as recently as March 21, 2022. **MOORE** also had one (1) contact with ARROYO at 630-453-3515 on March 17, 2022. A review of toll analysis also revealed eight (8) common contacts between **MOORE** and ROARK, four (4) common contacts between **MOORE** and ARROYO, and one (1) common contact between **MOORE**, ROARK, and ARROYO during this time.

176.    As stated above, on April 19, 2022, location data for **323-979-1250**, the number associated with **MOORE,** and 630-453-3515, the number associated with ARROYO**,** were both simultaneously registering on cellular towers in the immediate area of "Circa LA," 1200 S. Figueroa St., Los Angeles, California. It should be noted, investigators have previously identified the Circa LA apartments as the location of the marijuana "store" **MOORE** publicly advertises utilizing his Instagram profile 100BandBrand.  Numerous past Instagram videos posted by **MOORE** depict large amounts of cash and drugs being brought into and sold from a unit within the Circa LA apartments. Additionally, investigators have documented numerous Instagram

private messages in which **MOORE** directs people to come to "the store at Circa." In these messages **MOORE** directs the customers to park in the structure and he will "bring them up." Finally, one video posted by **MOORE** depicts him bringing in a large quantity of suspected marijuana, in multiple boxes. In this video, the word "CIRCA" can be seen on the floor of an elevator.

177. On May 3, 2022, and May 18, 2022, Det. Nagler obtained a subpoena for records for Circa LA, 1200 S. Figueroa St., Los Angeles, California.

178. Upon service of the subpoena's, the returned records revealed Aliyah THORSTEAD is the tenant of record of unit E3121. The lease is active from July 14, 2021, until January 13, 2023.

179. It should be noted, investigators have previously identified Aliyah Rose THORSTEAD (DOB XX/XX/2001) as the girlfriend of **MOORE**. In the past, THORSTEAD has been stopped with **MOORE** at the airport where **MOORE** was transporting a large amount of U.S. currency. Additionally, **MOORE** has posted a video on Instagram which depicted himself, Mefail IBRAIMI, and Aliyah R THORSTEAD pushing a cart with six (6) large cardboard boxes down a sidewalk in what appeared to be downtown Los Angeles California. Subsequent social media posts revealed that these boxes contained marijuana. Finally, investigators have determined through social media search warrants and toll analysis that THORSTEAD and **MOORE** have engaged in many phone calls and exchanged many text messages and social media private messages together during the duration of this investigation.

180. Since April 25, 2022, through May 21, 2022, ROARK utilizing 262-352-0761, has had 27 contacts with **MOORE** on **323-979-1250**.

181.    In approximately April or May 2022, Det. Nagler observed a video **MOORE** posted to his Instagram profile 100bandbrand, which depicted **MOORE** at the site of a large indoor grow operation. Det. Nagler observed the video within a few minutes of its posting and observed that the location data for **323-979-1250**, the number associated with **MOORE,** was registering on a cellular tower just west of South Holland, Illinois.

182.    On May 27 or May 29, 2022, **MOORE** again posted a video to the Instagram account 100bandbrand depicting himself at a large indoor marijuana grow greenhouse. Det. Nagler determined that location data for **323-979-1250**, the number associated with **MOORE,** was again registering on a cellular tower just west of South Holland, Illinois. Based upon the above, investigators believe that this is the site of one of **MOORE's** grow operations.

183.    On or around June 13, 2022, Det. Nagler observed a post to **MOORE's** Instagram profile 100bandbrand in which **MOORE** stated he broke his phone.

184.    Between June 13, 2022, and June 20, 2022, no outgoing cellular activity occurred with **323-979-1250**, the number associated with **MOORE.** Following this period of inactivity, **MOORE** made a post on his Instagram 100bandbrand stating he borrowed a phone while he waited for Apple to replace the phone he lost.

185.    On June 19, 2022, as described above, social media posts and location data for ROARK's phone confirmed **MOORE** and ROARK were together in Big Cedar Lake, Wisconsin.

186.    On June 28, 2022, as detailed above, HIDTA Analyst Martin Wilson analyzed location data for **323-979-1250**, the number associated with **MOORE** from May 27, 2022, to June 25, 2022, and determined the phone was registering on cellular towers in the same physical location with ARROYO for extended periods of time during ARROYO's three (3) visits to

57

Chicago, Illinois. Analysis of ROARK's location data compared with **MOORE's** social media posts revealed that both **MOORE** and ROARK were together at Big Cedar Lake, Wisconsin.

187. On July 13, 2022, as outlined above, Det. Nagler conducted a custodial interview of ARROYO, where ARROYO stated **MOORE** was actively engaged in narcotics trafficking. ARROYO stated **MOORE** was residing with a person named Justin H. JACHIMIEC in Chicago, Illinois, and he stated **MOORE** was using a warehouse belonging to JACHIMIEC for a grow operation. Prior to this interview, investigators utilized location data for **323-979-1250**, the number associated with **MOORE,** in conjunction with contemporaneous social media posts by **MOORE** on the Instagram account "100bandbrand" which depicted a marijuana grow operation, to determine that **MOORE** was frequently at the suspected grow operation in the area of South Holland, Illinois.

188. On July 18, 2022, Det. Nagler determined through searches in open source and law enforcement databases that Douglas A. JACHIMIEC is the owner of a warehouse located at 15446 Wentworth Avenue, South Holland, Illinois. This location is within the coverage area of cellular towers where **323-979-1250**, the number associated with **MOORE,** has frequently registered while **MOORE** was posting pictures on social media depicting a grow operation.

189. As outlined above, on August 3, 2022, HIDTA Analyst Alec Libby conducted analysis of toll and location data for 262-352-0761, the number associated with ROARK and **323-979-1250,** the number associated with **MOORE,** and he determined both phones were registering on cellular towers which cover the same areas in Chicago, Illinois, and Wisconsin on the following occasions: July 14, 2022, July 23, 2022, July 28, 2022, July 29, 2022, July 30, 2022, and July 31, 2022. During this same period, Det. Nagler observed numerous posts on the Instagram page "100BandBrand" where **MOORE** advertised marijuana for sale.

190. On August 30, 2022, HIDTA Analyst Martin Wilson analyzed location data collected for **323-979-1250,** the number associated with **MOORE,** as well as 630-453-3515**,** the number associated with ARROYO, and 262-352-0761, the number associated with ROARK. Analyst Wilson determined that the positional data for **MOORE** and ARROYO's cellular telephones registered on cellular towers in the same location on August 13, 2022, August 14, 2022, August 15, 2022, and August 26, 2022. During these periods, both phones registered on cellular towers which cover the Trump Tower in Chicago, Illinois. Analyst Wilson determined **MOORE** and ROARK's cellular telephones registered on cellular towers in the same location on August 5, 2022, and August 21, 2022. On August 5, 2022, both phones registered on cellular towers that cover Butler, Wisconsin, which is consistent with the presence of both individuals at ROARK's residence. On August 21, 2022, both **MOORE** and ARROYO**'s** cellular phones registered on towers that cover a portion of downtown Chicago, Illinois, consistent with both individuals meeting within that location.

191. On September 28, 2022, HIDTA Analyst Martin Wilson analyzed location data for **323-979-1250,** the number associated with **MOORE**. Analyst Wilson determined that at various times on September 2 through September 4, 2022, the phone associated with **MOORE** registered in the area of ARROYO's Trump Tower apartment at the same time as the phone associated with ARROYO, leading case agents to believe the two were meeting. Additionally, the location data for **323-979-1250,** the number associated with **MOORE,** revealed that on September 22, 2022, and September 23, 2022, the phones associated with **MOORE** and ROARK were pinging on cellular towers that covered the same area in Milwaukee, Wisconsin, leading investigators to conclude the two were together. Based upon their training, experience

59

and familiarity with the investigation, case agents believe that ARROYO and **MOORE** met to conduct DTO business.

192.    On October 25, 2022, HIDTA Martin Wilson conducted toll analysis of call data records collected for **323-979-1250,** the number associated with **MOORE**, and determined **MOORE** had twenty-six (26) telephonic contacts with 262-352-0761**,** the number associated with **ROARK**, between September 30, 2022, and October 24, 2022.   As indicated above in paragraphs 163-165 of this affidavit, case agents, through the use of positional data, were able to document a meeting between **MOORE** and ARROYO for drug related business using the **Target Cell Phone**.   While toll analysis did not reveal telephonic contacts between **MOORE** and ARROYO, case agents are aware that the DTO uses encrypted applications for communication which are not available to agents through ping warrants.   Regardless, the positional data allowed case agents to track meetings between **MOORE** and ARROYO.

193.    On November 3, 2022, the Honorable Stephen Dries, United States Magistrate Judge, authorized search warrants for telephone numbers 630-453-3515 (ARROYO**)** and **323-979-1250 (MOORE).**   In part, the warrants authorized case agents to obtain positional data for these phone numbers.   On December 2, 2022, the warrants expired.

194.    In early December 2022, **MOORE** made publicly visible posts on the Instagram page "100bandbrand." In these posts, **MOORE** stated that he was traveling to Columbia.   At this point investigators ceased receiving location data for **323-979-1250 (MOORE),** consistent with **MOORE's** international travel.   **MOORE** continued to make frequent posts to his Instagram profile indicating he was in Columbia and Brazil from early December 2022 through mid-January 2023.   During his time abroad, **MOORE** frequently posted images or videos either referring to his ongoing U.S. drag activity or depicting him possessing firearms. In mid-January

60

2023, **MOORE** began to post that he was returning to the U.S. Finally, on or about January 20, 2023, **MOORE** began posting videos asserting he was back in in the United States.

195. Upon his return to the U.S., Det. Nagler observed that **MOORE** made the following Instagram posts, related to his ongoing drug activity, to "100bandbrand" between January 21, 2023, and January 27, 2023:

   a. **MOORE** posted a video depicting a glass pipe used for smoking THC concentrates held on a porch overlooking a frozen lake with the text, "Forgot about these….Accepting best offer, don't dab anymore." A case agent recognized the yard depicted in this video as being consistent with that of 4738 Keeley Drive, Slinger, Wisconsin.

   b. **MOORE** posted a video of the Wisconsin Capitol Building with the text caption "Downtown Madison."

   c. **MOORE** posted a video at night with the text "Milwaukee, Wisconsin, Coming to a city near you #trapped." Your Affiant is aware through training and experience the term "trap" or "trapping" is often used as a slang term for drug trafficking.

   d. **MOORE** posted a video depicting himself holding large stacks of U.S. currency with the text "Rinse & Repeat." Based upon my training, experience and familiarity with the investigation, I believe that **MOORE** indicated that he anticipated "rinsing" the cash or its origins (i.e., drug trafficking) and then earning additional cash through these same activities.

   e. **MOORE** posted a video of himself riding in a vehicle showing him wearing jewelry and a large amount of cash visible. The video had the text "Milwaukee Wisconsin, here one day gone the next, if you owe me pay up!! Or you not getting shit!!!"

f.     **MOORE** posted a video of himself riding in what he describes as a "TRX" truck with the text "San Francisco, California, Who got the best prices out here? Extracts flower."

g.     **MOORE** posted another video with the text "Midwests menu is about to be updated, sorry for the wait, Once thing you cant argue is when I have it nobody has better prices then me lockin all pre orders before Thursday, Midwest Menu." Based upon my training, experience and familiarity with the investigation, I believe that the above conversations refer to MOORE's sale of marijuana and THC extract products.

196.   On February 1, 2023, HIDTA Analyst Wilson conducted toll analysis on call data records for **323-979-1250 (MOORE)** from the period of January 1, 2023, through January 31, 2023. Analyst Wilson observed the phone go active beginning on January 23, 2023, which coincides with **MOORE**'s return to the United States. Analyst Wilson determined **MOORE** called Ricky ROARK a total of 18 times between January 24, 2023, and January 30, 2023. The analysis further revealed that ROARK was **MOORE**'s most frequent caller. Additionally, the call data records indicate **MOORE** called many numbers which were consistent with **MOORE**'s previous pattern of cell phone usage. This leads investigators to conclude **MOORE** has resumed using **323-979-1250 (MOORE)**. Additionally, the drug activity observed on **MOORE's** Instagram profile "100bandbrand" indicates **MOORE** is still actively engaged in selling marijuana and THC related products.

197.   On February 8, 2023, the Honorable Stephen Dries, United States Magistrate Judge, authorized a search warrant for the telephone number **323-979-1250 (MOORE).** In part, the warrant authorized case agents to obtain positional data for this phone number. On March 10, 2023, the warrant expired.

198.    On February 23, 2023, **MOORE** posted to the social media Telegram account bearing name "Midwest Best" a video which depicted a large amount of raw Marijuana with the caption "Blue Blizzard (EMOJI) $1300."  Just above the video **MOORE** posted a hyperlink to a purported "menu" for the brand "Midwest Best."

199.    Case agents have determined that **MOORE** uses "Midwest Best" in a similar fashion to his Instagram account, "100bandbrand." **MOORE** has posted travel locations to his Instagram account "100band brand" that match posts to the Midwest Best" account such as arriving in Los Angeles and stating that he is "back in Chicago."  Additionally, **MOORE** has posted the same videos and controlled substances for sale on both his "100bandbrand" Instagram account and "Midwest Best" telegram account.  **MOORE** also posts on both the latest menu of drugs for sale and their corresponding prices.  Additionally, **MOORE's** contact information is the same on both the Telegram account, "Midwest Best," and his Instagram account, "100bandbrand."

200.    On February 28, 2023, **MOORE** posted to the social media Telegram account name "Midwest Best" a video which depicted a large amount of raw Marijuana with the caption "Who's getting fresher deps then me right now? From pink runtz to OG we have it all and in between !!! Lowest prices in LA come direct."

201.    On March 4, 2023, **MOORE** posted to the social media Telegram account name "Midwest Best" a video which depicted a large amount of raw Marijuana with the caption "Fresh Deps $500 DTLA."  It should be noted, investigators have previously identified Daniel ARROYO as working with **MOORE** in the marijuana distribution organization.  ARROYO resides in a suburb of Los Angeles, California.  Later that same date, **MOORE** posted a message to the Telegram account "Midwest Best" stating, "Chicago I'm here Triple aaa pretendos… Only

a few Left message me for media." At the time of this message, the location data collected for **323-979-1250 (MOORE)** indicated the device was located in Chicago, Illinois.

202. On March 6, 2023, **MOORE** posted to the social media Telegram account name "Midwest Best" several videos which depicted a large amount of raw Marijuana with the captions, "5 left first come first serve will give a steal on whoever takes all" and just below that the caption "Chicago." Later that day, **MOORE** posted a second video depicting a large amount of an unknown waxy substance in mason jars, consistent in appearance with THC wax, with the caption, "Last 3 pounds available offer up first come first serve Chicago."

203. On March 10, 2023, HIDTA Analyst Wilson conducted a toll analysis for **323-979-1250 (MOORE)** and determined the number had twenty (20) telephonic contacts with **(262) 352-0761** between February 12, 2023, and March 7, 2023. It should be noted, investigators have previously identified this number as belonging to Richard **ROARK**. Additionally, Analyst Wilson analyzed the location data collected for **323-979-1250 (MOORE)** and determined the device was registering on cellular towers which cover **ROARK's** house, in Brookfield, Wisconsin, for several hours on both March 7, 2023, and March 8, 2023. Additionally, on March 9, 2023, **MOORE** posted a publicly visible video to his Instagram profile "100bandbrand" which depicted a snowmobile inside a garage, which your Affiant recognizes as the belonging to **ROARK's** father, located in Slinger, Wisconsin. **MOORE** captioned the video, "Time to bring out the big toys." Because the location of this video indicates that **MOORE** was likely at the residence of ROARK's parents, this video leads investigators to conclude that **MOORE** and **ROARK** were likely together on March 9, 2023, as well. Additionally, location data for **323-979-1250 (MOORE)** indicated that on February 27, 2023, the device briefly registered in the area of Daniel ARROYO's residence, in the Los Angeles, California area. This

64

data is notable because MOORE's cell phone had not recently registered in the area of ARROYO's residence.

204. On March 16, 2023, the Honorable Stephen Dries, United States Magistrate Judge, authorized a search warrant for the telephone number **323-979-1250 (MOORE).** In part, the warrant authorized case agents to obtain positional data for this phone number. On April 15, 2023, the warrant will expire.

205. On March 17, 2023, **MOORE** posted videos to "100bandbrand." Case agents viewed a video looking through a unique glass extension of the living room that protrudes from the rest of the building. The video depicted the view of a downtown area believed to be Los Angeles California. On the video inside the room case agents observed what appeared to be several large glass jars of suspected THC crumble on a countertop and several money counters. The video displayed a large multicolor mural on a large tan building with a parking lot and several pine type trees lining the street below.

206. Another posted video displayed the same unique glass extension of the living room that protrudes from the rest of the building. The video depicted the view of a downtown area believed to be Los Angeles California. Additionally, the video displayed a large multicolor mural on a large tan building with a parking lot and several pine type trees lining the street below. The video is tagged "LA," with the text "New York who needs a menu, load just landed."

207. Case agents searched a "Google Earth" view of downtown Los Angles. Case agents located a large multicolor mural on a large tan building with a parking lot and several pine type trees lining the street below that exactly matched the views in the videos that **MOORE** posted. Case agents viewed the street view and observed a large building with unique glass extensions of the rooms that protrudes from the rest of the building. The images of the

surrounding building, the street view, the distinct mural and surrounding skyline revealed the video was taken from a mid to upper-level floor of 1050 S. Grand Ave., Los Angeles, California.

208. On March 23, 2023, case agents obtained a return of subpoenaed records for 1050 S. Grand Ave., Los Angeles, California. The subpoenaed records revealed that 1050 S. Grand Ave # 1901, Los Angeles, California is leased by Trenton Friedlander. Case agents know Trenton Friedlander and Sam **MOORE** are business associates, and are believed to live together in Los Angeles, California.

209. Based upon a review of the location data collected for **323-979-1250 (MOORE),** the device was located in this area during this collection period revealing this location is the residence of Sam **MOORE** and Trenton Friedlander when they are in Los Angles, California.

210. On March 24, 2023, case agents established surveillance in the area of 5718 N. Winthrop Avenue, Chicago, Illinois. Sam **MOORE's** girlfriend was identified as Annie G. Chaljub-Ramos (11/30/2000) who resides at 5178 N. Winthrop Avenue #306, Chicago, Illinois.

211. At approximately 4:27 p.m. on this date, a case agents observed **MOORE** exit the front door of 5718 N. Winthrop Avenue, open the front gate, and walk to the street while talking on his telephone. At approximately 4:28 p.m. a silver Hyundai bearing Illinois registration L486666 pulled up and stopped alongside **MOORE**. An individual tentatively identified as Trent Friedlander exited the rear seat of the Hyundai, gave **MOORE** a black backpack, and both he and MOORE walked to the gate for 5718 N. Winthrop Avenue. **MOORE** used a key to open to exterior gate, then he and Friedlander entered the building. The driver of the vehicle appeared to drive for Uber or Lyft, as he immediately departed.

212.    Based upon a review of the location data collected for **323-979-1250 (MOORE),** the device was located in this area during this collection period revealing this location is the residence of Sam **MOORE** while he is in Chicago.

213.    On April 4, 2023, **MOORE** posted to the social media Telegram account name "Midwest Best" a video which depicted a large amount of raw Marijuana with the caption, "Last day in MILWAUKEE…open today 12 pm-5 pm…SAS $1600 ONLY."   Lower on the page **MOORE** wrote, "ZA sold out Milwaukee," then "Chicago I still have 4 flavors left. Message me.  A lot of people have been asking for extracts.  What exactly do you want this next round I will solely be taking care of all my extract guys.  From shatter to batter to pre packaged.  Let me know your needs and it will be here by this next week MONDAY!"  Case agents are aware that based upon a review of the location data collected for **323-979-1250 (MOORE),** the device was located in Wisconsin at the time of this posting.

214.    On April 5, 2023, **MOORE** posted to the social media Telegram account name "Midwest Best" a video which depicted a large amount of raw Marijuana with the caption, "Chicago last day here get in tune with me, I have 4 more za left come clear me out, will throw you the best deals since they are the last ones."  Case agents' review of location data collected for **323-979-1250 (MOORE)** revealed that the device traveled from Wisconsin to Chicago on April 5, 2023.  The device then subsequently began registering in the area of Los Angeles, California, in a manner consistent with air travel.

215.    On April 10, 2023, HIDTA Analyst Wilson conducted a toll analysis for **323-979-1250 (MOORE)** and determined that the **Target Cell Phone** had sixteen (16) telephonic contacts with (262) 352-0761 between March 16, 2023, and March 22, 2023.  Case agents have previously identified this number as belonging to Richard ROARK.  Additionally, Analyst

Wilson analyzed the location data collected for **323-979-1250 (MOORE)** and determined the device registered on cellular towers which cover ROARK's parents' house, 4990 Arthur Road, Slinger, Wisconsin, on several occasions from April 1, 2023, to April 4, 2023. Further analysis of location data collected for **323-979-1250 (MOORE)** indicated the device traveled to Los Angeles, California immediately following the trip to Wisconsin. Location data collected for **323-979-1250 (MOORE)** indicated the device registered in Los Angeles, California between April 5, 2023, and April 10, 2023. On April 10, 2023, location data collected for **323-979-1250 (MOORE)** indicated the device traveled to Modesto, California.

216. On April 11, 2023, **MOORE** posted to the publicly visible Instagram profile "100bandbrand" a video which depicted a large quantity of suspected marijuana packed in vacuum sealed packaging, with the text "Los Angeles, California" displayed. On that same date, **MOORE** posted a video to the same page which depicted him driving a vehicle with large garbage bags filled with unknown contents. The video had the text "20 packkk??? Try 100, Los Angeles, you know what to do…lowest (emoji) around. Farm direct, stop getting middle mann." The video also included music with lyrics that referenced selling drugs. Case agents are aware that the location data collected for **323-979-1250 (MOORE)** indicated the device traveled from Modesto, California, to Los Angeles, California on the date these videos were posted. Based upon case agents' training, experience and familiarity with the investigation in conjunction with the video and positional data of the **Target Cell Phone**, case agents believe that **MOORE** picked up garbage bags full of marijuana from Modesto, California which **MOORE** then offered for sale on social media.

217. On April 13, 2023, the Honorable Stephen Dries, United States Magistrate Judge, authorized a search warrant for the telephone number **323-979-1250 (MOORE).** In part, the

68

warrant authorized case agents to obtain positional data for this phone number. On May 12, 2023, the warrant expires.

218.    On April 24, 2023, **MOORE** posted to the Telegram account name "Midwest Best" a video which depicted a large amount of raw Marijuana with the caption, "$1000 MINIMUM (first one ever)  Good Morning! I'm happy to announce this week I will be throwing major deals to all the people that have been trying to "start small" or get testers, as I try to push a clear inventory that's accumulating…$1000 BTC and an address is all you need.  That will cover shipping cost and whatever we decide on for your order."  The text continued, "Inventory includes Carts (2.50-5.00 $) Deps (300-600 $) Indoors (800-1000 $) Edibles $1-2 Joints $8-10 Extracts (message me) Liters (message me) Mushroom Chocolates (message me)."

219.    On April 26, 2023, **MOORE** posted to the publicly visible Instagram profile "100bandbrand" a video which depicted a large black garbage bag in the back seat of a vehicle. The video had the following text, "Plug Packs, pounds and dollars" overlaid the video.  The video also had an embedded hyperlink entitled "menu," and a location indicator which stated **MOORE** was in Los Angeles, California, bearing a timestamp of "1:11 pm."  The positional data collected for **323-979-1250 (MOORE)** indicated the device was registering on a cell tower in Los Angeles, California at this time.

220.    On May 3, 2023, **MOORE** posted to the publicly visible Instagram profile "100bandbrand" a video which depicted him and an unknown male unloading many boxes from a vehicle onto a luggage cart.  The video was captioned "Burnt tf out" bearing a time stamp of "11:14 am." Case agents observed an apartment building in the background of the video.  At the time the video was posted, location data collected for **323-979-1250 (MOORE)** indicated the device was registering on a cellular tower in the area of 640 S. Curson Avenue, Los Angeles,

California. Det. Nagler was able to use the location data collected to subsequently identify the apartment complex depicted in the video as One Museum Square Apartments. Location data for **323-979-1250 (MOORE)** continues to be invaluable which aids investigators in identifying new locations used by **MOORE.**

221.     On May 4, 2023, at 3:02 p.m. central standard time (CST), location data collected for **323-979-1250 (MOORE)** indicated the device was registering on cellular towers north of Los Angeles, California. A short time later, **MOORE** posted to the publicly visible Instagram profile "100bandbrand" a video which depicted him stuck in traffic on a highway. **MOORE** captioned the video, "Been stopped here 20 min stand still…Everybody I haven't got back to on bags, there's nothing around in LA be back from up north tonight setting all appointments tomorrow." Later that day, **MOORE** posted another video to the Instagram profile "100bandbrand" a video which depicted a large amount of stacked cash bearing a time stamp of "5:35 pm." Finally, later that evening, **MOORE** posted to the Telegram account name "Midwest Best" a video which depicted a large amount of raw Marijuana with the caption, "Old indoor, throwing stupid deals on these. 500 a P grab 10+ I'll do $400. Yes it's indoor do not even question me look at the work yourself." Based upon the positional data for **MOORE's** phone, combined with the social media posts and my familiarity with the investigation, I believe that **MOORE** traveled to the Oakland, California area to pick up THC products. Subsequently on the morning of May 5, 2023, positional data for 323-979-1250 revealed that **MOORE** returned to the Los Angeles area where **MOORE** now had product for sale.

222.     On May 10, 2023, the Honorable Stephen Dries, United States Magistrate Judge, authorized a search warrant for the telephone number **323-979-1250 (MOORE).** In part, the

warrant authorized case agents to obtain positional data for this phone number. On June 9, 2023, the warrant expired.

223. On May 31, 2023, **MOORE** posted to the publicly visible Instagram profile "100bandbrand" a video which depicted a large amount of cash, with a timestamp of 11:47 p.m. The video was captioned "Late night plays shoutout the city." Later that night, **MOORE** posted a video where he was visible. In this video, **MOORE** displayed a large amount of vacuum sealed marijuana sitting on the floor. The video is timestamped 2:56 a.m.

224. On June 1, 2023, **MOORE** posted to the Telegram account name "Midwest Best" a video which depicted a large amount of raw Marijuana with the caption, "Lemon Cherry Candies chicago…18 LEFT $1400 a pound message me these go the quickest…"

225. On June 2, 2023, **MOORE** posted to the Telegram account name "Midwest Best" a video which depicted a large amount of raw Marijuana with the caption, "Looking for a source? You found it." The video was also captioned, "$1400 a pound message me these go the quickest…" Finally, below the video was the caption, "Indoor OG smalls CHICAGO 30 available…$500 on singles $400 on bulk…" The positional data collected for **323-979-1250 (MOORE)** also indicated that on this date the device traveled from Los Angeles, California to Chicago, Illinois.

226. On June 4, 2023, **MOORE** posted to the Telegram account name "Midwest Best" a video which depicted a large amount of raw Marijuana with the caption, "Looking for a source? You found it." The video was captioned, "Indoor OG smalls CHICAGO 30 available…$500 on singles. $400 on bulk…" Finally, below the video was the caption, "Hey Shops open CHICAGO Until tomorrow 10am." The positional data collected for **323-979-1250**

(**MOORE**) indicated that at the time of this posting the device registered on a cell tower in Chicago, Illinois.

227. On June 8, 2023, **MOORE** was arrested in Milwaukee, Wisconsin for an outstanding Milwaukee Police Suspect Alert, related to a shooting which occurred in 2020. While in custody, **MOORE** placed recorded custodial calls to Ricky ROARK, and his current girlfriend Annie CHALUB (DOB 11/30/2000). During a phone conversation with CHALUB, CHALUB told **MOORE** she did something and "everything is safe." CHALUB also told **MOORE** that she deactivated his Instagram account "100bandbrand." **MOORE** then instructed her not to delete the account. CHALUB told **MOORE** that **MOORE's** mother told her to delete the account. In response, **MOORE** explained to CHALUB that his arrest "has nothing to do with that (dealing marijuana)." During his conversation with CHALUB, they also discussed the fact that their lease is up at the apartment in Chicago, and they discussed an impending move.

228. On June 9, 2023, **MOORE** was released from law enforcement custody. According to pen and trap data, MOORE began using **323-979-1250.** Analysis of toll activity between June 9, 2023, and June 19, 2023, revealed that **323-979-1250** was in contact with 91 telephone numbers frequently called by **MOORE** prior his arrest. These contacts include calls to Aliyah THORSTED, **MOORE's** prior girlfriend, Annie CHALUB and **MOORE's** relative, Natalie MOORE. This pattern of usage leads case agents to conclude **MOORE** has resumed usage of **323-979-1250.**

229. On June 15, 2023, **MOORE** posted to the publicly visible Instagram profile "100bandbrand" a video which was captioned, "Los Angeles I will see you today. All in towns message me. All my deps are ready..bringing you the lowest (stamp emoji) possible!" Based

72

upon my training, experience and familiarity with the investigation, case agents believe this is likely in reference to the price of his THC products.

230. On June 16, 2023, **MOORE** posted to the publicly visible Instagram profile "100bandbrand" a video which depicted a large amount of raw marijuana in plastic bags. The video was captioned, "Los Angeles, California." Case agents, who are familiar with **MOORE's** voice, were able to hear **MOORE** talking throughout the video.

231. On June 29, 2023, the Honorable Stephen Dries, United States Magistrate Judge, authorized a search warrant for the telephone number **323-979-1250 (MOORE).** In part, the warrant authorized case agents to obtain positional data for this phone number. On July 28, 2023, the warrant expired.

232. On July 3, 2023, **MOORE** posted to the publicly visible Instagram profile "100bandbrand" a video which depicted a person holding a large amount of cash with the caption "Chicago, Illinois Accepting all in towns. Lowest #'s around." At the time this video was posted, case agents observed that the positional data collected for **323-979-1250 (MOORE)** indicated the **Target Cell Phone** registered on cellular towers in Chicago, Illinois.

233. On July 10, 2023, **MOORE** posted to the publicly visible Instagram profile "100bandbrand" a video, time-stamped 4:56 p.m., which depicted **MOORE** driving on a highway with the caption, "Who's out here trapping? #trapped (emoji)." A short time later **MOORE** posted to the publicly visible Instagram profile "100bandbrand" a video, time-stamped at 8:15 p.m., which depicted him driving on a highway. On that same date, **MOORE** posted to the publicly visible Instagram profile "100bandbrand" a video which had the following text overlayed, "Ez Turnarounds… Los Angeles see you tomorrow Then it's Columbia next week (emoji)." This video was timestamped 10:07 p.m. Case agents' review of positional data

73

collected for **323-979-1250 (MOORE)** indicated that the **Target Cell Phone** traveled from Chicago, Illinois to Des Moines, Iowa. After a brief stop in Des Moises, Iowa, a review of the positional data for the **Target Cell Phone** revealed that the phone traveled back to Chicago, Illinois in a manner consistent with travel by vehicle. Your Affiant is aware from his training and experience that the slang term "trapping" is used to describe someone engaged in the selling of drugs. Additionally, analysis of location data collected for the **Target Cell Phone** indicated the device traveled from Chicago, Illinois to Los Angeles, California on July 11, 2022, in a manner consistent with air travel.

234. On July 11, 2023, **MOORE** posted to the publicly visible Instagram profile "100bandbrand" a video which depicted a large indoor marijuana grow operation bearing a timestamp of 4:07 p.m. Based upon their training, experience, and familiarity with the investigation, case agents believe that **MOORE** was at the site of one of his suppliers.

235. On July 12, 2023, **MOORE** posted to the publicly visible Instagram profile "100bandbrand" a video which depicted a large amount of raw marijuana. **MOORE** followed this post with another video depicting himself driving with the caption, "Modesto, California Modesto tap in." A short time later, **MOORE** posted a video which depicted a marijuana plant. Additionally, location data for **323-979-1250 (MOORE)** indicated that the **Target Cell Phone** traveled to Modesto, California on this date in a manner consistent with vehicle travel. Based upon the observed social media posts made while in Modesto, California, your Affiant believes Modesto, California is the location of a marijuana supplier for **MOORE.**

236. On July 17, 2023, Analyst Wilson analyzed the location data collected for **323-979-1250 (MOORE)** and determined the device traveled to Los Angeles, California from June 29, 2023, to July 1, 2023. Following the trip to California, the **Target Cell Phone** traveled back

to Chicago, Illinois and remained there until July 9, 2023. On July 10, 2023, the **Target Cell Phone** traveled to the Wisconsin Dells area, then to Des Moines, Iowa in a timeframe and route consistent with vehicle travel. On that same date, after a brief stop in Des Moines, Iowa, the target device returned back to Chicago, Illinois.

237. On July 11, 2023, the **Target Cell Phone** left Chicago, Illinois and began registering on cellular towers in Los Angeles, California, in a manner consistent with air travel. On July 12, 2023, the **Target Cell Phone** traveled from Los Angeles to Modesto, California in a manner consistent with vehicle travel. On July 12, 2023, the **Target Cell Phone** returned to Los Angeles, California where it remained until July 15, 2023. On July 16, 2023, the **Target Cell Phone** began registering in Chicago, Illinois. Your Affiant is aware **MOORE** was actively advertising marijuana for sale throughout his travel through his social media pages 100bandbrand and Midwest Best. Based upon **MOORE's** social media activity and his travel pattern, your Affiant believes that **MOORE** is actively engaged in selling marijuana.

238. On July 18, 2023, Det. Nagler learned **MOORE** flew to Miami, Florida, then continued onto Columbia.

239. On August 7, 2023, Det. Nagler spoke to HSI special agent Russel Dykema who stated that through HSI alerts, SA Dykema learned that **MOORE** boarded American Airlines flight number 1558 from Lima, Peru to Miami, Florida. SA Dykema further informed Det. Nagler that the flight landed in Miami on August 7, 2023, where **MOORE** cleared customs on that same date, and he continued on a flight to Chicago, Illinois.

240. On August 8, 2023, **MOORE** posted to his Instagram "100bandbrand," a still image of an apartment in Chicago, with the distinct image of the grim reaper and a clock on the wall with the text, "Felt good waking up in my own bed." And "Chicago lets get busy, here until

75

Wednesday. Then Los Angeles till Monday," "#letsgetit" tagged "Chicago Illinois." Case agents are aware that MOORE moved from his last location in Chicago. Case agents further believe that positional data will help to solidify **MOORE's** current location in Chicago, Illinois.

241.     According to pen and trap data, on August 8, 2023, **MOORE** began using **323-979-1250** again. A review and analysis of toll activity between August 7-8, 2023, revealed that **323-979-1250** was in contact with phone numbers frequently called by **MOORE** prior to his international travel. These contacts include, but are not limited to, three calls to Annie CHALUB (current girlfriend), one contact with known DTO member Zach Friedlander, and contacts with a family member, and a prior roommate, Justin Jachimenic. Based upon this pattern of usage, combined with MOORE's social media postings, case agents believe that MOORE has resumed his use of the **Target Cell Phone** for drug related and personal business.

242.     Your Affiant has reviewed toll analysis and electronic surveillance regarding **MOORE** and the **Target Cell Phone**. Based upon your Affiant's training, experience and familiarity with the investigation, your Affiant believes that the **Target Cell Phone** is an active line utilized by **MOORE** for his drug trafficking operation based upon the above. Additionally, location data will be invaluable in assisting investigators in learning the new location of **MOORE's** residence following his recent move.

243.     I therefore believe that the above information establishes probable cause to believe that cell-site information for the **Target Cell Phone** continues to assist case agents in determining the location and activities of the participants of the DTO and produce evidence of violations of Title 21, United States Code, Sections 846 and 841, conspiracy to distribute controlled substances, and distribution of controlled substances.

**Cell-Site Data**

244.     Based on my training and experience, I know that Service Providers can collect cell-site data on a prospective basis about the **Target Cell Phone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collects and retains cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

245.     Based on my training and experience, I know that the Service Provider can collect per-call measurement data, which the Service Provider also refer to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

**E-911 Phase II / GPS Location Data**

246.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As

discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available.

**Subscriber Information**

247.    Based on my training and experience, I know that wireless providers such as the Service Provider typically collects and retains information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collects and retains information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phone** user or users and may assist in the identification of co-conspirators and/or victims.

**AUTHORIZATION REQUEST**

248.    Based on the foregoing, I request that the Court issue the proposed search warrant,  pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

249.    I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

250.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

251.    Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## <u>ATTACHMENT A</u>

## Property to Be Searched

1.      Records and information associated with the following cellular device assigned call number (referred to herein and in Attachment B as the "Target Cell Phone"):

         a.     **323-979-1250,** that is in the custody or control of Verizon, a wireless telephone service provider headquartered in Bedminster, New Jersey.

**2.     The Target Cell Phone.**

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

I.      **Information to be Disclosed by the Provider**

    To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.      The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period August 1, 2021, to the present:

        i.      Names (including subscriber names, usernames, and screen names);

        ii.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.    Local and long-distance telephone connection records;

        iv.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.      Length of service (including start date) and types of service utilized;

        vi.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

81

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for the time period August 1, 2021, to the present including:

a. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

b. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT")].

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

82

ii.        Source and destination telephone numbers;

iii.       Date, time, and duration of communication; and

iv.       All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

c.      Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i.       To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of Target Cell Phone #2 on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

83

ii.     This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that will assist in the investigation of **Samuel MOORE** and others regarding violations of Title 21, United States Code, Sections 841(a)(1) and 846.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in these Warrants.

84